500 So.2d 973 (1986)
Willie Albert SMITH
v.
STATE of Mississippi.
No. 53564.
Supreme Court of Mississippi.
November 26, 1986.
Rehearing Denied February 11, 1987.
*974 Robert J. Brantley, Jr., Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Marvin L. White, Jr., Asst. Atty. Gen., Jackson, for appellee.
En Banc.
SULLIVAN, Justice, for the court:
Willie Albert Smith now comes before this Court and files his application for leave to proceed in the trial court pursuant to Mississippi Uniform Post-Conviction Collateral Relief Act, Mississippi Code Annotated, §§ 99-39-1 to 99-39-29 (Supp. 1985). He alleges that the prosecutor intentionally exercised the state's peremptory challenges to exclude black potential jurors on the basis of race and that the state failed to produce to Smith's counsel exculpatory information that was requested, and that was the subject of a court order.
Smith has had a long history before this Court. He was indicted and tried in the Circuit Court of the First Judicial District of Hinds County for the capital murder of Shirley Roberts. On July 30, 1981, he was convicted and sentenced to death. This conviction was affirmed on August 11, 1982. Smith v. State, 419 So.2d 563 (Miss. 1982). Smith's petition for rehearing was denied on September 22, 1982, and the United States Supreme Court denied his petition for writ of certiorari. Smith v. Mississippi, 460 U.S. 1047, 103 S.Ct. 1449, 75 L.Ed.2d 803 (1983).
On June 1, 1983, this Court denied Smith's first petition for post-conviction relief. Smith v. State, 434 So.2d 212 (Miss. 1983). The petition for rehearing on same was denied July 27, 1983. On August 1, 1983, Smith filed a petition for writ of habeas corpus in the United States District Court for the Southern District. This action is pending.
On January 31, 1984, Smith filed a second petition for writ of error coram nobis, with the essential allegation being that two of the state's witnesses committed perjury. This Court granted leave to file the petition in Hinds County Circuit Court. In Re Smith, 457 So.2d 911 (Miss. 1984). The trial court denied the petition and Smith appealed. We affirmed the trial court. Smith v. State, 492 So.2d 260 (Miss. 1986). Reference is made to the above opinions for a better understanding of the facts of this case.

I.

SHOULD THE APPLICATION BE GRANTED CONCERNING THE ALLEGATION THAT THE PROSECUTOR UNCONSTITUTIONALLY EXCLUDED BLACKS FROM THE JURY?
It is undisputed that all twelve of the state's peremptory challenges were used to exclude blacks. The jury which decided the case was composed of two white females, three black females, and seven white males. Smith alleges that he now has proof that the prosecuting attorney, Ed Peters, has systematically excluded blacks from juries, thereby meeting his burden of proof required under Swain v. Alabama in order to rebut the presumption that the prosecutor properly used his peremptory challenges. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). He also alleges that it demonstrates a violation of his constitutional guarantee to a trial drawn from a representative cross-section of the community. We do not pass judgment on the merits of these allegations since this claim is clearly barred by the post-conviction act under which Smith has applied for relief.
The relevant provisions of Mississippi Code Annotated, § 99-39-21 (Supp. 1985), are as follows:

*975 (1) Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the State of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.
... .
(4) The term "cause" as used in this section shall be defined and limited to those cases where the legal foundation upon which the claim for relief is based could not have been discovered with reasonable diligence at the time of trial or direct appeal.
(5) The term "actual prejudice" as used in this section shall be defined and limited to those errors which would have actually adversely affected the ultimate outcome of the conviction or sentence.
(6) The burden is upon the prisoner to allege in his motion such facts as are necessary to demonstrate that his claims are not procedurally barred under this section.
One of the purposes of the post-conviction act, stated in § 99-39-3 (2), is as follows:
(2) Direct appeal shall be the principal means of reviewing all criminal convictions and sentences, and the purpose of this chapter is to provide prisoners with a procedure, limited in nature, to review those objections, defenses, claims, questions, issues or errors which in practical reality could not be or should not have been raised at trial or on direct appeal.
We have consistently held that failure to raise an issue capable of resolution at trial or on direct appeal constitutes a waiver of that claim absent a showing of cause and actual prejudice. See, e.g., Billiot v. State, 478 So.2d 1043, 1045 (Miss. 1985). Smith alleges that a July 15, 1983, newspaper article and a deposition of Ed Peters taken April 12, 1985, sufficiently prove his allegations. The article contains quotes attributed to Peters. The deposition was taken in a habeas corpus proceeding which is pending in federal court and which involves another petitioner. Edwards v. Thigpen, 595 F. Supp. 1271 (S.D.Miss. 1984). Smith contends that these two items show that Peters has unconstitutionally excluded blacks from juries, and that since the article and the deposition were not available when he was convicted, and when the conviction was affirmed, he has sufficiently overcome the procedural bars.
We do not even insinuate to pass judgment on the habeas corpus proceeding pending in federal court. The fact that this action may have produced material which could be used as evidence in an evidentiary hearing on Smith's allegations is immaterial to our present inquiry.
It was known to Smith at the time of the trial that the state had used all of its peremptory challenges to exclude blacks, yet no motion or objection concerning such was entered. The issue was not raised on appeal, nor was it raised in Smith's two subsequent petitions for writ of error coram nobis. The latter petition was not filed until after the newspaper article was published. Smith has not shown why he could not have discovered, with reasonable diligence, the "legal foundation upon which the claim for relief is based". We do not view the article nor the deposition as sudden enlightenments to Smith or his counsel that he might have a claim such as this.
These same allegations were made in Evans v. State, 485 So.2d 276 (Miss. 1986), wherein this Court held that such a claim was barred.
Smith argues that the procedural bars of the post-conviction act should not apply to him since they were not in effect when he was convicted. We have recently held that such a contention is without merit. Dufour v. State, 483 So.2d 307, 308 (Miss. 1985). But cf. Odom v. State, 483 So.2d 343, 344-45 (Miss. 1986) (the 3-year statute of limitations under § 99-39-5(2) applies prospectively to individuals convicted prior *976 to April 17, 1984, the date of enactment for § 99-39-1, et seq.).

II.

A.

IS AN EVIDENTIARY HEARING REQUIRED BECAUSE THE STATE FAILED TO DISCLOSE EXCULPATORY MATERIAL?
At the evidentiary hearing on the previous petition for writ of error coram nobis, the entire police file concerning the investigation was introduced into evidence. Smith contends that certain information contained in this file was not disclosed to his counsel, despite a request for exculpatory material and a court order requiring exculpatory material to be disclosed. The material complained of includes the statement of a witness and reports of the investigating officers.
The evidentiary hearing concerned the issue of whether two state witnesses, Kenneth Thomas and James Wells, had committed perjury when they made in-court identifications of Smith as being a black man they saw attack Shirley Roberts in front of a Tote-Sum store, where she worked, only hours before her body was discovered behind the apartment building where Smith lived. It also concerned the issue of whether the prosecuting attorney knowingly used this perjured testimony. The trial court held that Smith was not entitled to a new trial. On appeal, we held that it was proven that the two witnesses committed perjury in this regard; however, a new trial was not required because there was no reasonable probability that a different result would be reached if a new trial was had without the perjured testimony. We also held that the prosecuting attorney had been negligent in allowing false testimony, which he had solicited, to go uncorrected, but there was no reasonable likelihood that the false testimony could have affected the judgment of the jury. We affirmed the trial court. Smith v. State, 492 So.2d 260 (Miss. 1986).
In the previous case, the issue was whether the new information concerning the perjury required a new trial. Following the guidelines and criteria set out in the precedent cases, we denied a new trial. Now we must determine whether the state failed to disclose certain material which resulted in denying Smith a fair trial.
In Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215, 218 (1963), the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." This rule encompasses impeachment evidence as well as exculpatory material. Malone v. State, 486 So.2d 367, 368 (Miss. 1986), (citing United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).
There are three requirements to being successful in a Brady claim of failure to disclose, and they are as follows: (1) a suppression of evidence by the prosecution; (2) the suppressed evidence is favorable to the defense; and (3) the suppressed evidence is material. Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); Martinez v. Wainwright, 621 F.2d 184 (5th Cir.1980).
In United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the issue was whether the prosecutor's failure, without a request, to provide defendant's counsel with certain background information about the victim, which would have tended to support the defendant's self-defense claim, denied the defendant a fair trial pursuant to the Brady rule. The defendant had filed a motion for a new trial asserting that he had discovered that the prosecution had failed to disclose that the victim had a prior criminal record.
The Court said that the Brady rule "arguably applies in three quite different situations. Each involves the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." *977 427 U.S. at 103, 96 S.Ct. at 2397, 49 L.Ed.2d at 349.
The first situation is the use of perjured testimony by the prosecution. [See Smith v. State, 492 So.2d 260, 267 (Miss. 1986)]. The second is characterized by a pre-trial request for specific evidence. This was the situation in Brady. In this regard, the Agurs Court said the following:
A fair analysis of the holding in Brady indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial.
... .
The test of materiality in a case like Brady in which specific information has been requested by the defense is not necessarily the same as in a case in which no such request has been made. Indeed, this Court has not yet decided whether the prosecutor has any obligation to provide defense counsel with exculpatory information when no request has been made. Before addressing that question, a brief comment on the function of the request is appropriate.
In Brady the request was specific. It gave the prosecutor notice of exactly what the defense desired. Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable.
427 U.S. at 104-06, 96 S.Ct. at 2397-99, 49 L.Ed.2d at 350-51.
The Court then considered the third situation involving the prosecution's duty to respond when no request or only a general request for exculpatory material has been made and said the following:
In many cases, however, exculpatory information in the possession of the prosecutor may be unknown to defense counsel. In such a situation he may make no request at all, or possibly ask for "all Brady material" or for "anything exculpatory." Such a request really gives the prosecutor no better notice than if no request is made. If there is a duty to respond to a general request of that kind, it must derive from the obviously exculpatory character of certain evidence in the hands of the prosecutor. But if the evidence is so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce, that duty should equally arise even if no request is made. Whether we focus on the desirability of a precise definition of the prosecutor's duty or on the potential harm to the defendant, we conclude that there is no significant difference between cases in which there has been merely a general request for exculpatory matter and cases, like the one we must now decide, in which there has been no request at all. The third situation in which the Brady rule arguably applies, typified by this case, therefore embraces the case in which only a general request for "Brady material" has been made.
427 U.S. at 106-07, 96 S.Ct. at 2399, 49 L.Ed.2d at 351-52.
The Court further discussed the constitutional duty of the prosecution to volunteer exculpatory material to the defense when no request has been made or only a general request for exculpatory matter has been made:
We are not considering the scope of discovery authorized by the Federal Rules of Criminal Procedure, or the wisdom of amending those Rules to enlarge the defendant's discovery rights. We are dealing with the defendant's right to a fair trial mandated by the Due Process Clause of the Fifth Amendment to the Constitution. Our construction of that Clause will apply equally to the comparable Clause in the Fourteenth Amendment applicable to trials in state courts.

*978 The problem arises in two principal contexts. First, in advance of trial, and perhaps during the course of a trial as well, the prosecutor must decide what, if anything, he should voluntarily submit to defense counsel. Second, after trial a judge may be required to decide whether a nondisclosure deprived the defendant of his right to due process. Logically the same standard must apply at both times. For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose.
Nevertheless, there is a significant practical difference between the pre-trial decision of the prosecutor and the post-trial decision of the judge. Because we are dealing with an inevitably imprecise standard, and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure. But to reiterate a critical point, the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial.
427 U.S. at 107-08, 96 S.Ct. at 2399-400, 49 L.Ed.2d at 352.
The Court then stated the standard of materiality which is applicable when the defense makes no request or only a general request:
The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.
427 U.S. at 112-13, 96 S.Ct. at 2401-02, 49 L.Ed.2d at 354-55.
In the recent case of United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), a majority of the Court agreed that a "reasonable probability" standard of materiality was "sufficiently flexible" to cover all Brady failures to disclose favorable information. This was true regardless of whether the request was specific or general or whether there was no request at all. 105 S.Ct. at 3385, 87 L.Ed.2d at 496 (White, J., plurality opinion) (quoting Blackmun, J., 105 S.Ct. at 3384, 87 L.Ed.2d at 494 concurring opinion). A majority also agreed that the formulation of the standard should be: "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. Justice Blackmun stated: "A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." 105 S.Ct. at 3384, 87 L.Ed.2d at 494 (Blackmun, J., concurring). The majority disagreed only as to what relevancy, if any, the nature of the request should have to this inquiry.
In Malone v. State, 486 So.2d 367 (Miss. 1986), the issue concerned nondisclosure of the prosecution's plea agreement with their star witness. This Court, recognizing that nondisclosure of such may require a new trial pursuant to Brady and its progeny, said: "The question before us is how these rules apply to the factual and procedural context of this case. We begin with the fact that Malone made no specific pre-trial discovery request in discovery for plea agreements with [the star witness]... . He made only a general request for exculpatory material." Malone, 486 So.2d at 368.
*979 The Court concluded that if such an agreement existed it would have been evidence favorable to the accused. We remanded for an evidentiary hearing on whether the agreement did exist and, if it did, whether it was "material in the sense that its suppression undermines confidence in the outcome of the trial." Malone, 486 So.2d at 369 (quoting Bagley, supra).
We now hold that the Bagley standard of materiality should be used in all Brady claims regardless of the nature of the request. However, the trial judge should not focus narrowly on the probable effect of the evidence upon the jury. He should take into account all the relevant facts including any impairment upon the defense's decision making process, either prior to or during trial. A necessary factor in this inquiry is whether the defendant had specifically requested the material in question. See Bagley, 105 S.Ct. at 3384, 87 L.Ed.2d at 494 (Blackmun, J., concurring opinion). Furthermore, the prosecutor should resolve doubtful questions in favor of disclosure or submit the question to the trial judge.
The material at issue in the case sub judice includes a statement of witness Wells, made 3 days after the incident, and reports of the investigating officers which Smith contends could have been used to impeach Wells' and Thomas' testimony that Smith was the assailant they saw that morning. Smith had not made a specific request for any statements of witnesses; however, he did make a blanket request for all exculpatory material.
We now apply the principles above to the case at hand. The brief form statement of Wells did assert that he did not think he would know the assailant again, since he did not get a good look at him. The investigating officers' reports were also indicative of Wells not being able to identify the assailant he saw that morning.
The problem with Smith's argument is that the statement and reports complained of are not inconsistent with Wells' testimony at trial. Wells admitted that he did not think he could identify the assailant, and that he had told the police that he could not. He testified that the day before trial started, during a photograph lineup, was the first time he had identified the assailant. We held in the prior decision that this was part of the rationale for not requiring a new trial: Wells' testimony simply was not a positive identification of Smith as the assailant he saw that morning.
We avoid saying that the material was not favorable because it was cumulative. The fact that impeachable material was cumulative to other impeaching evidence does not make it non-favorable. In the case sub judice, the material simply was not favorable to the accused because it was not inconsistent with Wells' testimony. See Barnes v. State, 471 So.2d 1218 (Miss. 1985); Barnes v. State, 460 So.2d 126 (Miss. 1984).
For much the same reason, the material in the file concerning witness Thomas not identifying Smith at a lineup the day after the incident was not favorable to Smith. Thomas admitted on cross-examination that he had told the officers at the lineup that he could not identify the assailant. His testimony was that he knew that Smith was the assailant, but he kept it to himself during the lineup, which Smith was in.
Even if it could be said that this material was favorable, we would have to conclude that neither it or any of the other material in this file was of such a nature that non-disclosure of it, under the facts of this case, was such as to undermine the confidence in the outcome of the trial. (There would also be an issue for the trial court as to what material was in fact disclosed.)
This does not necessarily end our inquiry, however. The Brady rule sets a constitutional floor for determining when a new trial is required when there is non-disclosure of exculpatory or favorable material. This State has a uniform rule of discovery which may be stricter in enforcement. Miss.Unif.Crim.R.Cir.Ct.P., 4.06 (Adopted 1979).
*980 This is a different case from 4.06 cases where the state attempts to introduce incriminating evidence despite objections to it for failure to disclose. In those instances, the trial judge has the opportunity to correct any failure to disclose. See, e.g., Gray v. State, 487 So.2d 1304 (Miss. 1986), (and the cases cited therein). See also, Box v. State, 437 So.2d 19, 22, n. 1 (Miss. 1983) (Robertson, J., concurring opinion).
This Court has essentially analyzed the type of 4.06 claim as in the case sub judice the same way as a Brady claim. See, e.g., Malone, supra; Barnes v. State, 471 So.2d 1218 (Miss. 1985); Barnes v. State, 460 So.2d 126 (Miss. 1984). That being so, there must be a determination whether there was a non-disclosure of favorable information which was material. Having already decided this question in the negative, the petitioner is not entitled to an evidentiary hearing on this issue.

B.

IS AN EVIDENTIARY HEARING REQUIRED BECAUSE THE STATE FAILED TO DISCLOSE THAT A WITNESS HAD BEEN AN INFORMANT?
Smith had specifically requested the identity of any and all confidential informants who depicted themselves as eyewitnesses to the events constituting the charge against him. From the record of the previous evidentiary hearing, it appears that witness Thomas had been an informant, in some capacity, for the Jackson Police Department, though not an informant on this particular case.
The fact that a prosecution witness has been, in the past, an informant for the law enforcement department which investigated the crime charged is information which could touch upon the credibility of that witness. Therefore, the information could be considered favorable and subject to disclosure under Brady and Rule 4.06. This is information which should be disclosed, especially when a specific request for such information is made. See Garvis v. State, 483 So.2d 312, 316 (Miss. 1986); Breckenridge v. State, 472 So.2d 373, 377 (Miss. 1985); Sims v. State, 313 So.2d 27, 29 (Miss. 1975); Hardy v. State, 313 So.2d 26, 27 (Miss. 1975); Ward v. State, 293 So.2d 419, 421 (Miss. 1974).
In our previous opinion wherein we affirmed the trial court's denial of a new trial, we based our opinion on the overwhelming evidence of guilt even after discounting the perjured testimony. Smith, 492 So.2d at 267-268. Part of this evidence was the testimony of Thomas which was not recanted by him after trial. Since information that he had been an informant for the Jackson Police Department could have been used to impeach him, we must conclude that it was favorable to Smith.
The fact that the prosecuting attorneys and the investigating officers, who were with the Jackson Police Department, might not have known this at the time of trial is immaterial since the knowledge of such is imputed to them. Smith, 492 So.2d at 267; United States v. Agurs, 427 U.S. at 110, 96 S.Ct. at 2400, 49 L.Ed.2d at 353; Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104, 109; Fuselier v. State, 468 So.2d 45, 56 (Miss. 1985).
However, in spite of this violation because of the overwhelming evidence of guilt discounting the testimony of Wells and Thomas, the error was harmless. The Application for Leave to Proceed in the Trial Court is denied.
APPLICATION FOR LEAVE TO PROCEED IN TRIAL COURT DENIED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, ANDERSON and GRIFFIN, JJ., concur.