566 So.2d 680 (1990)
Mark Art WELCH
v.
STATE of Mississippi.
No. 07-KA-58667.
Supreme Court of Mississippi.
March 14, 1990.
Rehearing Denied October 3, 1990.
Steven E. Farese, Farese Farese & Farese, Ashland, for appellant.
Edwin Lloyd Pittman, Atty. Gen., elected Supreme Court Justice Jan. 3, 1989, Mike C. Moore, Atty. Gen., Wayne M. Snuggs, Asst. Atty., Harrison Solomon Ford, III, Deirdre McCrory, Sp. Asst. Attys. Gen., Jackson, for appellee.
EN BANC.
SULLIVAN, Justice, for the Court:

I.
On October 7, 1986, the badly beaten body of Joseph Ray Heath was found in a *681 rural area of DeSoto County, near Arkabutla Lake. The body was partially clothed. The cause of death was confirmed by pathologist Thomas McLees to be multiple severe trauma.
Walter Robertson and James Cole, employees of the U.S. Army Corps of Engineers, found the decedent Heath. Mississippi Highway Patrol Criminal Investigator Jay Clark and Officer Jimmy Dees were called to the scene where they found the body, face down with arms outstretched over the head, clothed in a T-shirt, blue jeans pulled down to the knees, underwear and one sock.
Investigation of the DeSoto County, Mississippi, records revealed that Heath had been arrested by the Southhaven Police for public drunkenness several weeks earlier, and had been released on bond. Examination of the Bonding Company's records furnished the names of Robina Welch, "his aunt," and Mark "Bubba" Welch, "best friend/cousin."
Officer Jimmy Dees and Investigator Jay Clark spoke with Mark Welch in Memphis, Tennessee, the following day. Based on this conversation, the police considered Welch a suspect.
He was transported to the Memphis Police Station on October 8, 1986, where he was questioned by Investigator Clark in a tape-recorded conversation. He implicated two of his friends in the murder. That same day, approximately one hour after Welch's questioning, Kenny Jones and Jim Parks' statements were taken by Investigator Clark.
Although there were some discrepancies in the confessions, the evidence is clear that Kenny Jones killed Heath and that Welch and Jim Parks participated in beating Heath on the night in question. Kenny Jones and Jim Parks pled guilty to the murder. Welch refused, admitting that he did strike Health, but also stated that he had not intended to participate in the ultimate murder.
On the night of the murder, Jones, Parks, Heath and Welch were playing cards and drinking whiskey and wine, at Welch and Kenny Jones' trailer in Memphis, Tennessee. The mood turned belligerent and combative. Jones and Heath got into a heated fist-fight. Jones overpowered the inebriated Heath and Heath left on foot.
Shortly thereafter, Welch left in his truck with Parks. Down the road they ran into Heath. He joined them in the truck. They returned to the trailer and picked up Jones. All four proceeded to Polly William Park in Memphis where Heath was beaten by each of them.
They decided to go to Mississippi and "dump-off" Heath. He was loaded back in the bed of the truck along with Jones. It is not known what incited Jones, but he decided he was going to kill Heath. He wrapped jumper cables he found in the bed of the truck around Heath's neck and started strangling him.
Once in Mississippi Welch stopped at a store on Highway 301 and instructed Jones to leave Heath alone. At that point Jones let Welch in on his intentions to kill Heath. He pushed Welch up against the truck in a threatening manner, stating he would kill him if he did not acquiesce. Parks persuaded Jones to leave Welch alone.
Welch next stopped near Arkabutla Lake, in DeSoto County, Mississippi, because the truck was overheating. He got out to get some water at a pumping station. Jones pulled Heath out of the truck. Heath kept telling Jones to leave him alone. Jones then hit Heath in the back of the head with a "buddy bar", which is a large three-foot long iron bar, weighing sixty or seventy pounds.
Parks helped Jones drag Heath by his feet into the woods, but then came back to help Welch with the truck. Jones, making sure he had accomplished his task, struck Heath with the "buddy bar" repeatedly. He came out of the woods announcing that he had killed Heath.
The jury returned a verdict against Welch for murder. On July 3, 1987, the Circuit Court of DeSoto County sentenced Welch to life imprisonment. He then filed motions for judgment notwithstanding the verdict and for a new trial, which were *682 denied. Accordingly, Welch brings this appeal.

II.

DID THE STATE FAIL TO TIMELY COMPLY WITH WELCH'S MOTION TO COMPEL DISCOVERY UNDER SECTION 4.06 OF THE MISSISSIPPI UNIFORM CRIMINAL RULES OF CIRCUIT COURT PRACTICE?
Welch raises several alleged discovery violations by the State. It is only necessary to address the State's failure to produce the statements given by Kenny Jones and Jim Parks, because we find the other claims to be without merit.
On October 8, 1986, in a tape recorded conversation with the Memphis Police Department, Investigator Jay Clark interviewed Jones and Parks concerning Heath's death. Investigator Jimmy Dees interviewed Jones again at the Tallahatchie County Jail on October 10, 1986, because his first statement was a total fabrication. Thereafter, both Jones and Parks confessed and pled guilty to the murder.
On December 18, 1986, Welch served the State with a discovery motion, requiring the state to produce all exculpatory materials within its possession. The State refused to disclose the taped statements, because in its judgment they were not exculpatory. On June 4, 1987, Welch filed a motion to compel discovery of Jones and Parks' taped statements, and on June 12, 1987, filed a motion for a continuance because he had not been furnished copies. On June 15, 1987, the date of trial, the circuit court examined the three statements in camera and ruled that the statements were not discoverable.
Welch alleges that the State failed to comply with Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice and that under the holding of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny, he was denied due process when the State declined to make available to him the statements of Jones and Parks.
It is submitted by Welch that the recorded confessions of Jones and Parks were exculpatory in several respects. He contends that the following constitute exculpatory statements made by Jones and Parks:
(1) Jones admitted that he had used the jumper cables to choke Heath;
(2) Jones admitted he hit Heath with the "buddy bar", causing the serious head injury;
(3) Parks stated that he saw Jones grab Welch and threaten to kill him before and after the murder;
(4) Parks and Jones stated that Parks and Welch were putting water in the truck when Jones killed Heath;
(5) Welch was the only one who did not have to burn his clothes;
(6) Welch was an unwilling and unknowing bystander to the murder; and
(7) Jones told Parks he was serious about his intentions to kill Heath and that he felt Welch could not withstand interrogation, which showed that Welch had no knowledge that the killing was going to take place.
Rule 4.06 of the Uniform Criminal Rules provides, in pertinent part:
(a) The prosecution shall disclose to each defendant or to his attorney, and permit him to inspect, copy, test, and photograph upon request and without further order the following:
* * * * * *
6) Copy of any exculpatory material concerning defendant.
* * * * * *
In addressing the primary question of exculpatory evidence this Court has afforded broad discretion to the trial judge in deciding when to permit a defendant to examine the statements of the prosecution's witnesses. Williams v. State, 544 So.2d 782 (Miss. 1989); Barnes v. State, 460 So.2d 126 (Miss. 1984). Upon extensive review, however, we find that Jones and Parks' statements were exculpatory within the meaning and contemplation of the Rule 4.06(a)(6). The State should have provided Welch with the statements, and it was reversible *683 error for the circuit court to hold otherwise.
In Hentz v. State, 489 So.2d 1386 (Miss. 1986), we stated:
An important question in discovery, such as involved here, is who is going to determine whether or not tapes or written instruments are exculpatory or important to the defense, if counsel is unable to see, hear, or know what is contained therein? Is the State attorney the only person who will make that determination? We think not. The Court now declares that as a matter of good practice and sound judgment in the trial of criminal cases, prosecuting attorneys should make available to attorneys for defendants all such material in their files and let the defense attorneys determine whether or not the material is useful in the defense of the case. We direct the attention of trial judges to this problem and suggest that they diligently implement this suggestion in order to dispense with costly errors, which might cause reversal of the case. Barnes v. State, 460 So.2d 126 (Miss. 1984); Harris v. State, 446 So.2d 585 (Miss. 1984); Morris v. State, 436 So.2d 1381 (Miss. 1983).
489 So.2d at 1388.
This case typifies our concern espoused in Hentz. The statements were replete with facts that could have aided Welch in his defense. In Parks' statements, he made several references to the fact that he and Welch were not involved in the murder, that Jones murdered Heath, and that Jones threatened Welch. In Jones' statement, he admitted strangling Heath with the jumper cables and striking the fatal blow with the "buddy bar", but stated he was "fuzzy" about other details which was attributable to his intoxication. Jones never implicated Welch. These facts substantiate Welch's primary defense that he did not know that Jones planned to murder Heath nor did he participate in the murder. Also, it substantiates the fact that Jones threatened Welch's life when he told Jones to leave Heath alone.
It should be noted that Welch was supplied with copies of the statements in question at trial during his cross-examination of Investigator Clark. This production, however, was not sufficient to comply with Rule 4.06(a)(6). Discovery must be provided at a time far enough in advance of trial to give the defense a "meaningful opportunity" to make use of it. Inman v. State, 515 So.2d 1150 (Miss. 1987); Stewart v. State, 512 So.2d 889 (Miss. 1987). In no way did the receipt of these statements during trial give Welch a "meaningful opportunity" to make use of them. Defense counsel was entitled to have access prior to trial. Since he was not given such access, a reversal of Welch's conviction is warranted.

III.
Several other assignments of error were asserted by Welch concerning the proceedings below. Because we reverse on the discovery violation we need not address these other alleged errors. We will, however, summarily address several alleged errors concerning the introduction into evidence of Jones and Parks's confessions, the introduction of certain photographs, and certain defects in the jury instructions. This will be of consequence to the circuit court on remand.
First, it was error to allow the State to introduce into evidence the statements of Jones and Parks over Welch's confrontation objection. The evidence was admitted under Rule 106 of the Miss. Rules of Evidence, which was incorrectly interpreted by the trial judge. The rule first contemplates the introduction of a writing by a party, then a contemporaneous introduction of other parts of the statements to prevent the misleading of the jury.
Defense counsel was merely questioning Investigator Clark during cross-examination about his investigation of Jones and Parks. He in no way introduced parts of these statements into evidence. Curiously enough, defense counsel had never had access to or even seen these statements prior to cross-examination. There is also serious confrontation problems. The jury was unable to observe the demeanor of Jones and *684 Parks when they made the unsworn statements and the statements were taken under the coercive atmosphere of police interrogation.
Second, it was error not to allow Welch's proffered lesser-included offense manslaughter instructions. Lesser-included offense instructions should be given if there is an evidentiary basis in the record that would permit a jury rationally to find the defendant guilty of the lesser offense and to acquit him of the greater offense. McGowan v. State, 541 So.2d 1027 (Miss. 1989); Lee v. State, 469 So.2d 1225 (Miss. 1985); Ruffin v. State, 444 So.2d 839 (Miss. 1984). In McGowan, citing Harper v. State, 478 So.2d 1017, 1021 (Miss. 1985), we stated the evidentiary standard as follows:
A lesser-included offense instruction should be granted unless the trial judge and ultimately this Court can say, taking the evidence in the light most favorable to the accused and considering all the reasonable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of a lesser-included offense (conversely, not guilty of at least one essential element of the principal charge).
McGowan at 1028.
Miss. Code Ann., Sec. 97-3-27 (1972), As Amended, authorizes a conviction of manslaughter when a person is slain without malice during the commission of certain felonies, including kidnapping. In Griffin v. State, 293 So.2d 810 (Miss. 1974), we held that the defendant could be convicted for manslaughter under Miss. Code Ann., Sec. 97-3-27 when he participated in the kidnapping, but did not participate in the actual killing. Taking the evidence in the light most favorable to Welch, the jury could have found that Welch lacked the requisite intent of malice aforethought to assist in the murder but that he did participate in the kidnapping. The manslaughter instructions should have been allowed.
It was also error for the trial court not to allow Welch's instruction relating to his theory of defense. Defendants are entitled to have instructions on their theory of the case presented to the jury for which there is foundation in evidence, even though the evidence might be weak, insufficient, inconsistent, or of doubtful credibility, and even though the sole testimony in support of the defense is the defendant's own testimony. U.S. v. Young, 464 F.2d 160, appeal after remand 482 F.2d 993 (5th Cir.1973); Gandy v. State, 355 So.2d 1096 (Miss. 1978). The preceding instruction presented Welch's version of his defense and the facts testified to at trial; accordingly, it should have been submitted to the jury.
The following issue was not submitted to this Court on appeal but it constitutes such an egregious error that it must be addressed. The State proffered the instruction below, which was submitted to the jury:
The Court instructs the Jury that under the laws of the State of Mississippi, fear, coercion or duress is no defense to the charge of murder, and this is true regardless of who struck the fatal blow. Accordingly, if you find from the evidence in this case, beyond a reasonable doubt, that the Defendant was an accessory before the fact to the murder of Joseph Heath, as defined by the Court's Instructions, then even if the Defendant was frightened, coerced, or forced, such is not to be considered by you and is no defense in this case. (Emphasis added).
This instruction is contrary to the laws of this state. Welch was tried as an accessory before the fact. To be convicted as an accessory the defendant must possess the mens rea for the commission of the crime. The precise state of mind of the defendant has great significance in determining the degree of his guilt. An accomplice may be convicted of accomplice liability only for those crimes as to which he personally has the requisite mental state. He must have a "community of intent" for the commission of the crime. Malone v. State, 486 So.2d 360 (Miss. 1986); Shedd v. State, 228 Miss. 381, 87 So.2d 898 (1956).
The State's instruction instructs the jury that even if Welch was forced or *685 coerced, this fact could not be considered by them. The cumulative effect of this instruction is that Welch is guilty of murder regardless of his mental state. This instruction affirmatively negates the mens rea requirement and should not have been given.
Lastly, the probative value of a number of the color autopsy photographs is questionable. Several photographs were introduced into evidence of the dissected cadaver. They show the cadaver cut open in a Y-shape manner with the ribcage refracted back over the face of the victim, the anterior part of the thoracic cavity, the ribs and the sternum, the ribs removed from the body; the abdominal walls including the intestines which have been opened up, and organs that have been removed from the cadaver.
Generally, the rule is that the admissibility of photographs rests within the trial court's sound discretion. We will not reverse a lower court on the ground that photographs of the deceased were admitted into evidence unless the lower court abused its discretion. Marks v. State, 532 So.2d 976 (Miss. 1988); McFee v. State, 511 So.2d 130 (Miss. 1987). Gruesome photos which have no evidentiary purpose or probative value except to inflame and arouse the emotion of the jury, however, should not be admitted. McNeal v. State, 551 So.2d 151 (Miss. 1989); Cabello v. State, 471 So.2d 332 (Miss. 1985); Billiot v. State, 454 So.2d 445 (Miss. 1984).
It is hard to imagine, upon review, what the probative value was in allowing photographs of the dissected cadaver into evidence during Welch's trial. They do not show the circumstances surrounding death, the cruelty of the crime, the place of the wounds, or the extent of force or violence used. The photographs were extremely unpleasant and used in such a way as to be overly prejudicial and inflammatory.
REVERSED AND REMANDED.
DAN M. LEE, P.J., and PRATHER, ROBERTSON, ANDERSON and BLASS, JJ., concur.
HAWKINS, P.J., and ROY NOBLE LEE, C.J., concur in part, and dissent in part.
PITTMAN, J., not participating.
HAWKINS, Presiding Justice, concurring in part and dissenting in part:
I concur in the reversal of this case on one issue, the failure of the circuit court to give a requested lesser included offense instruction on manslaughter. I perceive no reversible error as to a discovery violation, however, and respectfully suggest that the majority is carrying us further than any of our previous decisions, or the United States Supreme Court mandates.
First, what this case is not. As the majority recognizes, this is not a case of a technical violation of Rule 4.06(a)(1). Until Brock v. State, 530 So.2d 146 (Miss. 1988), Rule 4.06(a)(1) provided as follows:
(a) The prosecution shall disclose to each defendant or to his attorney, and permit him to inspect, copy, test, and photograph upon request and without further order the following:
(1) Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial.
In Brock v. State, supra, 530 So.2d at 152, subparagraph (1) was amended to provide the following:
(1) Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial, together with a copy of the contents of any statement, written or unwritten, recorded or otherwise preserved, of each such witness. [Emphasis added]
Brock also mandated that the amended rule go into effect with the date of the publication of the opinion, August, 1988. Welch's trial was in 1987.
Clearly Rule 4.06(a)(1) in effect at the time of Welch's trial is not implicated, because all that was required of the State was the names and addresses of witnesses the State proposed to offer in chief at trial. Nor indeed, is the amended 4.06(a)(1) implicated in this case, because neither Kenneth Jones nor Jim Parks testified in the State's *686 case in chief. In fact, they did not testify at all.
Their statements, therefore, as the majority recognizes, must come under 4.06(a)(6), which requires the State to furnish the defense:
(6) Copy of any exculpatory material concerning defendant.
It is in this context we should examine whether reversible error was committed, and as to this, we stated in Smith v. State, 500 So.2d 973, 980 (Miss. 1986), when examining a failure of the State to disclose exculpatory information:
This Court has essentially analyzed the type of 4.06 claim as in the case sub judice the same way as a Brady claim. See, e.g. Malone, supra [Malone v. State, 486 So.2d 367 (Miss. 1986)]; Barnes v. State, 471 So.2d 1218 (Miss. 1985); Barnes v. State, 460 So.2d 126 (Miss. 1984).
See, Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215, 218 (1963).
Just as it is important to know precisely which discovery requirement is involved, it is also necessary to know how the problem arose at trial. It will be shown this case is outside the parameter of Brady and its progeny.
Three men were involved in the slaying of Joseph Ray Heath, namely: Kenneth Jones, Jim Parks, and the defendant Welch. After questioning the men, detailed statements were obtained from each of them. From these statements we may gather that as part of the afternoon and evening's entertainment on Monday, October 6, 1986, Jones, Parks and Welch repeatedly beat, then strangled with a jumper cable, and finally Jones, with a heavy metal bar, crushed in the skull of Heath. Heath was drinking heavily that day, was apparently in an obnoxious mood and made insulting remarks to the others, and they responded by physical blows continuing over several hours. Jones inflicted most of the punishment, followed by Parks, with Welch primarily being the driver, although even he had occasion to pay his physical respects to Heath.
All four of the parties were Memphians, but their slaying was carried out for the most part and consummated in DeSoto County, where following an attempt to strangle Heath with jumper cables in the bed of a pickup truck, Jones dragged Heath off into some woods in the vicinity of Arkabutla Lake, and there finished him off with multi-strokes in the head with a sixty-pound "buddy bar."
Jones and Parks pleaded guilty to murder and were each sentenced to life imprisonment.
Although neither Jones, Parks nor Welch testified at trial, the statements of Jones and Parks were furnished the defense during trial, and were used to cross-examine Jay F. Clark, the Mississippi Highway Safety Patrol investigator who had taken the statements from the three.
Once again we need to pause and note what this case is not. Virtually every claim of error from failure to furnish material claimed to be exculpatory involved facts not learned until subsequent to trial, and in which the defendant was deprived of any opportunity to use the material at trial. Brady v. Maryland, supra, failure to furnish the accused a copy of an accomplice's confession in which the accomplice admitted committing the homicide; United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), failure to furnish defense with criminal record of victim; U.S. v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), failure to disclose that prosecution's only witness had been paid for incriminating information; Smith v. State, 457 So.2d 911 (Miss. 1984), failure to inform defense that one of the two eyewitnesses to slaying had been unable to identify the accused immediately following the slaying from a police lineup, and the other identifying him only after being shown photographs four months later during course of trial; Williams v. State, 544 So.2d 782 (Miss. 1987), defense never shown material, circuit judge ruled it was not exculpatory, and this Court affirmed. Nor, is this a case of Hentz v. State, 489 So.2d 1386 (Miss. 1986), in which the defense never saw the material, because *687 the state, not the circuit judge, took it upon itself to determine the material was not exculpatory.

WHAT HAPPENED
At the beginning of trial in June, 1987, defense counsel asked the court for permission to examine the statements given by Jones and Parks to the law enforcement officers, pursuant to a defense pretrial discovery motion. Defense counsel candidly conceded to the Court that Welch was not entitled to these statements by Jones and Parks at that stage of the trial unless they were exculpatory. The district attorney and defense counsel then informed the court that there had been an agreement prior to trial that these statements would be furnished to the court for examination to determine whether or not they were exculpatory, and if so, the defense would be entitled to them. The circuit judge made an examination of the statements of all three, and found that there was no exculpatory material in Jones's and Parks's statements. He also ruled, however, that in the event Jones and Parks testified the statements would be reviewed again. The defense then announced that it intended to call Jones and Parks as defense witnesses, and requested they be made available to the defense.
As above noted Clark, the Highway Patrol investigator who obtained confessions and detailed statements from all three, testified. During the cross-examination of Clark, the statements of Parks and Jones were furnished defense counsel, and extracts therefrom favorable to Welch were used by the defense. As an example, the record contains the following colloquys:
Q: Mr. Clark from your investigation  did your investigation not reveal that Kenneth Jones was the individual who used a blunt object to kill and murder Joseph Ray Heath?
A: Yes, sir.
Q: Did your investigation not reveal that Kenneth Jones was the individual who strangled and beat the deceased, Joseph Ray Heath, with a pair of jumper cables.
A: Yes, sir.
(Vol. II, p. 233)
Q: Did Mr. Welch tell you that Mr. Jones threatened to kill him if he said anything about it?
A: "Kenney said he would kill me if I said anything about it."
Q: Yes, sir.
A: "He told Jim the same thing."
Q: Yes, sir. Did you later verify that to be the truth.

A: I think the Parks statement reflected that also, yes, sir.
Q: Did Mr. Welch tell you that he intended for no one to be killed that night?
A: I remember in the statement he told Jones, I think, he didn't want any part of any murder or something like that.
Q: Did you not verify through Mr. Welch's statement that he told you that he had not touched Mr. Heath from the time they left Tennessee that night until the time they arrived in Mississippi, did you not verify that to be the truth through all witnesses?

A: I would have to go through all these statements.

Q: You are not denying that, are you sir?
A: No, sir.
Q: Thank you.
COUNSEL FOR THE DEFENSE:
No further questions.
(Vol. II, pp. 329-330) [Emphasis added]
Clark, of course, was an investigator, not an eyewitness to the beatings and slaying of Heath. The only three eyewitnesses to this crime were Welch, Jones and Parks. Clark took the statements of all three, and the only possible way he could "verify" anything Welch told him was to examine the statements of the other two.
Upon redirect examination of Clark, the statements of Jones and Parks were offered into evidence under Rule 106 of the Mississippi Rules of Evidence (MRE), and over defense objections.
Without putting either Parks or Jones on the stand as State witnesses, the only evidence *688 the State had to offer as to Welch's guilt was the confession he gave to Clark. In his confession Welch made it clear he did not strangle Heath with the jumper cables, and in fact told Jones to leave him alone, that he, Welch, wanted no part of murder. Likewise, he said he was putting water in the pickup truck when Jones dragged Heath off into the woods, and never saw Jones hit Heath with the "buddy bar." In the confession he also said Jones threatened to kill him if he reported the crime. The State's proof of Welch's guilt was as an accessory, not as the person who actually killed Heath. The State never endeavored to prove or suggest anything beyond this. And if this were not clear from Welch's confession, defense counsel was also permitted to develop from Clark that Jones's and Park's statements bore this out as well.
As can be seen this is not a Brady case at all, because Welch was given copies of Parks's and Jones's statements during trial and permitted to use them.
Compare this case to In re Smith, 457 So.2d 911 (Miss. 1984). The witnesses, Thomas and Wells, testified at Smith's trial that he was the person attacking the victim. The defense was never told by the State that two days after the slaying Thomas was unable to identify Smith as the attacker at a police lineup. Neither was the defense told that Wells was never able to identify Smith prior to trial. Both were shown photographs during the course of trial before they testified. Defense counsel's knowledge of this highly exculpatory material was limited to what he gleaned as to the witnesses' uncertainty during cross-examination. Two years later Thomas and Wells by affidavits claimed they had perjured themselves and indeed they could not identify Smith or anyone else as the assailant.
Smith sits on death row. Smith v. State, 500 So.2d 973 (Miss. 1986).
Compare this case with Williams v. State, 544 So.2d 782 (Miss. 1987). Sixteen written statements of witnesses were furnished to the circuit judge to determine whether or not they contained exculpatory material making them subject to discovery. The circuit judge after examining them found nothing exculpatory in any of the statements, and defense counsel was never permitted to use them at trial. We affirmed, and Williams is on death row. In Williams there was a cogent dissent urging that defense counsel should indeed have been permitted at least to examine these statements and use them for cross-examination purposes.
Here the statements were furnished defense counsel and used during the course of trial to cross-examine Clark, even though Parks and Jones never testified.
There are only two reasons an accused needs a pretrial statement of a witness.
The first is to see if the statement contains information tending to prove the defendant's innocence. This need is drastically dissipated, however, when the eyewitness can be interviewed by defense counsel as easily and as readily as by the State. When an eyewitness is a non-resident of the State, or hostile to the defense, or otherwise unavailable to the defense prior to trial, then his pretrial statement for use at trial is much more important. Here, of course, Parks and Jones were known to Welch, and available for unlimited interview. Indeed, defense counsel announced at trial he expected to call them both as defense witnesses.
The other reason defense counsel wants to examine a copy of a witness's pretrial statement is when that witness is going to testify as a State witness. Then the defense wants the statement for purposes of cross-examination. Williams v. State, supra, 544 So.2d at 792 (Sullivan, J., dissenting); White v. State, 532 So.2d 1207, 1213 (Miss. 1988); Cummins v. State, 515 So.2d 869, 876 (Miss. 1987); Smith v. State, supra, 500 So.2d at 976; Malone v. State, supra, 486 So.2d at 368.
Both these requirements were met in this case. Defense counsel was permitted to milk Parks's and Jones's statements of every bit of material he considered exculpatory. As to the second requirement, neither Jones nor Parks testified, and there was no *689 need to use the statements for impeachment purposes.
In sum, the circuit judge in this case faithfully followed the literal language of Rule 4.06, and our holding in Williams v. State, supra. He examined the statements in camera, and announced he found nothing exculpatory in them. Nevertheless, during trial and prior to either Jones or Parks being offered as witnesses, he permitted defense counsel to examine both their statements overnight.
The majority notes that Parks's statements made several references to the fact that he and Welch were not involved in the murder, that Jones murdered Heath, and that Jones threatened Welch. All of this information is contained in the confession of Welch, and was uncontradicted. Like-wise, it was uncontradicted from the confession of Welch that it was Jones who strangled Heath with the jumper cable, and beat him to death with the "buddy bar." The State never attempted to contradict any of this. Moreover, it was all brought out before the jury by the statements themselves introduced into evidence.
Nor can I agree with the majority that simply because defense counsel was not furnished copies of these statements prior to trial, they were thereby deprived of a "meaningful opportunity" to make use of them at trial. The majority does not enlighten us as to how Welch would have been the least bit better off had he been furnished copies of the statements a week or a month prior to trial. All the "exculpatory" information in the Parks and Jones statements mentioned by the majority Welch clearly knew, himself, indeed said so in his confession, and he clearly knew Jones and Parks knew what he knew. And he used them at trial.[1]
Trial in this case was concluded June 18, 1987. On July 3, 1987, approximately three weeks later, defense counsel filed a 21-page motion for a new trial. There is not one word in this entire motion suggesting that Welch had been denied a "meaningful opportunity" prior to trial to examine the statements, or that if defense counsel had been permitted to examine them prior to trial this would have been more beneficial than to examine them during trial proceedings.
Moreover, in the briefs of Welch on appeal he does not attempt to enlighten this Court as to how seeing these two statements prior to trial would have been of any more benefit to him in the defense than seeing them at trial.
The only possible way Welch could have been harmed from failure to see these statements prior to trial would have been if they contained leads or clues to exculpatory material that needed pursuing in order to present Welch's defense, and that failure to do denied his that opportunity: e.g., a missing witness, or a missing piece of evidence. None of that was present in this case. All these statements contained were versions of Parks and Jones as to what happened that fateful night, facts Welch already knew, and Welch got the full benefit of both statements.

ERROR IN INTRODUCING ENTIRE PARKS AND JONES STATEMENTS OVER DEFENSE OBJECTIONS
Welch raises a far more serious question in his claim of error in introducing into evidence the pretrial statements of Jones and Parks. This, of course, is entirely inconsistent with his previous claim that there is a Brady violation because he was not furnished with copies of these statements. The circuit judge permitted the State to introduce them under MRE Rule 106, and under the facts of this case in my view there was no error in his doing so.
MRE 106 is a codification of the common law rule of completeness. If a party wishes to cross-examine a witness as to a prior out-of-court statement (usually made by the witness himself), he will not be permitted to pick out the part favorable to himself and leave it there. The opposing *690 party is then permitted to offer the entire statement into evidence in order to give the jury a complete picture. Davis v. State, 230 Miss. 183, 92 So.2d 359 (1957); Sanders v. State, 237 Miss. 772, 115 So.2d 145 (1959). See, Comment to Rule 106: "Such a rule attempts to prevent misleading the jury by taking evidence out of context."
Of course, in the absence of the cross-examination by defense counsel none of the contents of the statements given by Parks and Jones would have been competent evidence, and it would have been highly prejudicial to admit them. Barnes v. State, 199 Miss. 86, 23 So.2d 405 (1945); Darby v. State, 121 Miss. 869, 84 So. 6 (1920); Moore v. State, 102 Miss. 148, 59 So. 3 (1912).
It is clear from this record that defense counsel did seek to take advantage of whatever part of Parks's and Jones's statements favored Welch, and did thereby open the door. It was a dangerous trial tactic.
The question then, is to what extent did Rule 106 permit the use of portions or all of the remainder of Parks's and Jones's statements?
Through this tactic defense counsel got from Clark that in the statements of Parks and Jones they had related that Welch had not strangled Heath, that Welch had not hit Heath with the heavy instrument, that Welch told Jones he did not want any part of any murder or to that effect, and that Welch had not touched Heath from the time the group left Tennessee. Defense counsel squeezed out of Clark virtually every favorable part to Welch from both Jones's and Parks's statements. If he did not thereby open the door for other, and unfavorable parts of the statements as to Welch's participation, it would be difficult to envision how the door could ever be opened.
Welch should not be permitted to complain on appeal of a trial tactic which backfired. His counsel skated on very thin ice, and it broke.
Rule 106 states:
When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.
Rule 106 does not necessarily require that when a witness is questioned about a prior written or recorded statement that all the remainder must be offered into evidence, but only that part which "ought in fairness to be considered."
The statement of Jones and Parks are lengthy and give each of their versions of what transpired the evening of the slaying.
Welch did not seek at trial to inform the court, nor on appeal to inform the Court what part should have been excluded when these entire statements were placed into evidence. Welch simply objected at trial and on appeal to the introduction of any part of the statements. In this he clearly errs.
He does not attempt to distinguish for us the portions which exceed the necessity of completeness. Clearly other portions of the statements (indeed perhaps all) were admissible to explain the participation of Welch in the crime. Since Welch makes no attempt to separate the wheat from the chaff, this Court should not undertake the task for him. If there were some particular portions of the statements which he considered unnecessary, irrelevant, or prejudicial, it was incumbent upon him to set them out first to the circuit judge, and then to us on appeal.
To give a simple illustration of the fairness of the circuit judge in requiring that all of the statements be introduced into evidence after portions had been ventilated before the jury, let us assume the facts were the other way around. Let us suppose a witness testifying in a trial had received a letter from the defendant in which he admitted killing another person, but the letter also stated that at the time of the slaying the deceased was taking dead aim at the defendant with a double barrel shotgun. If the State asked the witness was it not true that he had received a letter from the defendant in which he admitted killing the deceased, can anybody believe it *691 would not then be perfectly proper to introduce the entire letter into evidence?

FAILURE TO GIVE MANSLAUGHTER INSTRUCTION
As I noted initially, I do agree that the case should be reversed on the one issue of failure to give a defense requested manslaughter instruction.
Of course, if there were no evidence of the manner in which Heath was slain, it would be presumed to have been murder. And, there is nothing about the combined statements of Jones and Parks which reduces this crime to manslaughter. This should not necessarily mean, however, that Welch's participation had to make him guilty of murder as opposed to manslaughter.
While Welch did not testify, the prosecution did get the benefit of his detailed confession to Clark and the law enforcement officers. Having used Welch's statement to convict, the State should not be entitled to deny Welch jury consideration of those parts of his statement, if any, which might reduce the crime, insofar as his participation, to manslaughter.
While quite weak, I am convinced Welch was entitled to a manslaughter instruction of some kind, as the majority has concluded. From his statement Welch could have been guilty of manslaughter by culpable indifference to Heath, or of a slaying without malice, giving his version the most favorable light possible. It would probably have made no difference in the ultimate outcome of his case had Welch been given one or more manslaughter instructions, but it was reversible error, in my view, to deprive him of the jury's consideration of this lesser offense. He was also entitled to have the jury instructed that Jones did the actual killing.
ROY NOBLE LEE, C.J., joins this opinion.
NOTES
[1] We would certainly be hard put to fault the prosecution for any delay anyway. The prosecution never offered any objection to defense counsel seeing the statements so long as the circuit judge examined them first.