ALGHERI *v.* THE STATE, 25 Miss. Rep., 584.

### HOMICIDE.

While circumstantial evidence is in its nature capable of producing the highest degree of moral certainty, yet experience proves that it is a species of evidence, in the application of which the utmost caution and vigilance should be used.

It is the exclusion of every other hypothesis, which invests mere circumstances with the force of truth. Whenever the evidence leaves it indifferent which of several hypotheses is true, or merely establishes some finite probability in favor of one hypothesis rather than another, such evidence cannot amount to proof, however great the probability may be.

Error to Harrison circuit court. HARRIS, J.

The facts of this case are, that Barnardo Algheri was indicted in the circuit court of Harrison county for the murder of Bartolo St. Andrew, who was found dead in the town of Biloxi, with two wounds on his left breast, and one in his back beneath the left shoulder blade, which seemed to have arrested the instrument. The wounds were examined by a physician, and were declared to be inflicted with a slender pointed instrument of not exceeding a half an inch in breadth, which had penetrated four or five inches. The wounds were mortal, and appeared to have been made with the spear of a sword-cane, or some such instrument. Two or three days after the murder was committed, the prisoner (Algheri) was brought to Biloxi by the deputy sheriff, who found in his possession when taken, a sword-cane, which was fourteen inches long and slightly bent at the point. The body of deceased was disinterred for further examination and the spear or sword-cane of prisoner inserted in the wound on the back which came in contact with the breast bone, which bone was examined and appeared to have been struck by some pointed instrument; upon examination, the other wounds in the body corresponded with the size of the instrument shown; it was further proven, that on the night the murder was committed, a number of persons collected round the body, and on the statement of one Guin, the sheriff arrested one George Young as the supposed murderer of St. Andrew. Witness Henley stated, that on the night of the murder, witness Guin and Nixon had been supping together at an oyster saloon, and had risen from supper and walked out together about nine o'clock, and soon Nixon and

Guin went in the direction of the Magnolia Hotel, which was near the scene of the murder, and in a few minutes after the parties separated, the cry of murder was heard in the direction his companions had gone ; and when he approached the dead body, he found Guin and Nixon standing over it, and witness asked Guin and Nixon who committed the murder, when Guin said he saw the man killed, and deceased was fleeing from the murderer, who did not stop after deceased fell, but immediately fled ; and he (Guin) pursued him a short distance, but the man turned upon him and presented some sort of a weapon, which arrested his (Guin's) progress ; and the man turned and continued his flight, and he lost sight of the man near the premises of Capt. Goos; and he (Guin) took the man to be George Young ; that the man wore a cap and had on a colored shirt.

George Young, when arrested, was found in an oyster-house in a direction opposite to that in which the person described by Guin was seen fleeing; and Young exhibited no emotion when arrested but astonishment ; and no weapon was found upon his person but an old pocket knife with a short blade ; his dress was a glazed cap, a dark-colored shirt, and shoes without heels. Young was discharged upon examination by proof that clearly established he was at another place at the time the killing took place.   That thirty yards from where the body was found there were signs of scuffle on the ground, and from that point to where the body was found, there were tracks of two persons' feet on the sand, and one appeared to have been made with shoes without heels.   Prisoner (Algheri) was arrested in Hancock county on board of a steamboat, and was much frightened when brought to Biloxi and delivered to the sheriff, and a crowd of persons assembled to witness his landing.   Prisoner told the sheriff that the sword-cane he had belonged to James Stromley, which Stromley denied.

Gabriel Mazean testified that he knew the deceased, who kept a grocery and oyster-house near the Magnolia Hotel in Biloxi ; that he saw the prisoner with two others, and the deceased together, on the same evening the murder was committed ; they were in witness' grocery between five and six o'clock on that evening, and drank together.   While there, a quarrel

ensued between them; the prisoner (who is a native of the isle of Sicily) and the two others, accused the deceased of something which he denied; the three seemed to be against the deceased, and the prisoner seemed most excited against him, and quarelled with him most; and they shortly after separated; the prisoner and the two others (who were Italians) going towards the house of James Stromley, and the deceased went towards the house of the deceased, which was about fifty yards west of witness' house. He saw no more of the prisoner and his companions until 8 o'clock the same evening, when they came to his door from the direction of Stromley's, and, while passing, he saw prisoner have in his hand a sword-cane, exactly similar to that exhibited in court, and which he believes to be the same cane; prisoner tapped witness on the breast with the cane and said to him "Adieu," as he passed with the two other men. The moon shone very brightly at the time; prisoner had on a cap, and the cane was such as witness had never seen before; they were going in the direction where deceased lived; and after the lapse of ten or fifteen minutes, witness heard the cry of murder in the direction prisoner and his companions had gone. The body of deceased was found about one hundred yards west of witness' house, and deceased lived about fifty yards west of him. The prisoner and his companions disappeared from Biloxi that night, and the other two men have never been heard of or seen since about that place, nor was prisoner to be found there that night after nine o'clock.

Daniel Goos testified that on the night the murder took place he was alarmed by the barking of his dog, and went out of his house, found two persons in his yard, and one ran away, and the other, who was about the size of prisoner, told him if he would let him off he would not come there again; thinks the man had on a cap, but did not know him, and next morning he saw where the men had crossed some dirt thrown up out of a well, and one of them must have had on shoes without heels. The man who spoke to him did so in broken English; he was not George Young, for he was an American, and he knew Young well. Witness knew nothing of the killing until next morning. It was also in proof, that, on the night the killing took place, three

men in company were seen going in the direction of the house of deceased, when in a few minutes the cry of murder was heard in the direction of the house of deceased.

James Stromley knew deceased and prisoner, and saw him on the night the murder was committed about nine o'clock, but not afterwards, until brought back to Biloxi in custody of the sheriff; and heard prisoner and deceased quarrelling about one or two weeks before the killing took place; that deceased had insulted prisoner, but they were friendly afterwards up to the time of the killing, so far as he knew. Prisoner wore a cap on that night. It was in proof, that, at the time of the quarrel, deceased had chased the prisoner with an oyster knife.

Richard Nixon testified that on the night the killing took place, John L. Henley, Guin and witness supped together at an oyster saloon, and thinks it was about nine o'clock when they left the saloon; they walked towards the Magnolia House, and Guin was somewhat under the influence of spirits; that Henley left them, and soon after they saw two men running, and one of them made a blow at the other and then ran off, and the other man ran ten or fifteen steps and fell; and saw another man running with the man who stabbed deceased, and Guin followed after them a short distance, when he returned, and they both examined the body of the dead man. Guin told witness he knew the man who killed St. Andrew, and said it was George Young, and said the two men who ran towards Goos' went through a puddle of water. The sheriff immediately went in search of George Young and arrested him; his pantaloons were wet when arrested. Young proved an *alibi*, and was discharged. This was all the testimony.

The jury found the accused guilty of murder, when his counsel made a motion for a new trial, which was refused, and the accused prayed a writ of error to this court.

*John D. Freeman* for plaintiff in error.

There is no prosecutor marked on the indictment, and it must, therefore, be quashed. Cody v. State, 3 How. 27; Peter v. State, ib., 433.

The record does not state on what day of the term the accused was arraigned, if at all. The statement of the arraign-

ment should have been made in the form in which it is averred. 1 Chit. Cr. L., 415–419.

No special *venire facias* issued or was returned into court, and there is no return of the sheriff that there was any good and lawful men summoned by him to try the prisoner only. Hutch. Co., 1007; People v. McKay, 18 Johns., 212; Commonwealth v. Hoofnagle, 1 Brown, 201; 1 Chitty's Cr. L., 515–517. The jury were not sworn in the form prescribed. Ib. 552–555. The verdict was not rendered in the presence of the prisoner. Ib., 636.

The evidence is circumstantial, and the prisoner was not identified as the murderer; and another person was believed to have committed the offense. The evidence does not exclude the hypothesis that any other person might have committed the offense. For these, and many other reasons, the cause should be reversed.

*D. C. Glenn*, attorney general.

YERGER, J.:

The plaintiff in error was indicted for murder, and was convicted. The evidence in the case was entirely circumstantial. And although its tendency is to create an impression in the mind unfavorable to a belief of the innocence of the accused, it is not sufficiently strong, in our opinion, to warrant his conviction.

While circumstantial evidence is, in its nature, capable of producing the highest degree of moral certainty, yet experience and authority both admonish us that it is a species of evidence in the application of which the utmost caution and vigilance should be used.

A distinguished writer on the law of evidence has said, that " it is always insufficient, where assuming all to be proved, which the evidence tends to prove, some other hypothesis may still be true, for it is the actual exclusion of every other hypothesis which invests mere circumstances with the force of truth. Whenever, therefore, the evidence leaves it indifferent which of several hypotheses is true, or merely establishes some finite probability in favor of one hypothesis rather than another, such evi-

dence cannot amount to proof, however great the probability may be." 1 Stark. on Ev., 572. We do not deem it proper to comment upon the evidence, as the case will be reversed, and the prisoner again tried. In our opinion, however, the circumstances proved in this record against the accused, did not warrant his conviction. We, therefore, reverse the judgment and remand the case.