IRVING, J.,
for the Court.
¶ 1. Larry Hammett was found guilty of possession of a schedule II controlled substance, and was sentenced to sixteen years as a habitual offender, without the possibility of early release or parole. Aggrieved, he asserts the following as errors on appeal: (1) the refusal of the trial judge to “fully entertain any and all matters of recusal” after a motion for recusal was made, (2) the refusal of the court to quash the indictment after the State lost exculpatory evidence, (3) the failure of the court to grant Hammett’s motion for a directed verdict because of insufficiency of evidence, and (4) the failure of the court to grant Hammett’s motion for a new trial due to the overwhelming weight of the evidence.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. After recognizing Hammett leaving Bud G’s Lounge in the city of Natchez, a Natchez police officer took him into custody on the basis of an outstanding arrest *92 warrant. At some point, the officer conducted a pat down search of Hammett, although the officer testified that he did not perform a full body search.[1] The officer discovered no weapons or contraband in the course of his search. After his arrest, Hammett was taken to the police station to be booked. While waiting to be processed, Hammett was handcuffed to a bench in the booking room. Shortly after arriving at the police station, Hammett told an officer that he had swallowed some cocaine and felt ill. The officer brought a trash can, which was placed next to Hammett at the end of the bench. Except for law enforcement, there was only one individual, Ashley King, in the booking room with Hammett. King had been arrested for embezzlement and was also waiting to be processed. King was handcuffed to the opposite end of Hammett’s bench.
¶ 4. King testified at trial that she saw Hammett rubbing his legs together to take a substance out of his socks. She testified that he stopped when she looked at him. She also testified that she eventually heard something hit the bottom of the waste basket that was next to Hammett. Shortly thereafter, officers came and took Hammett away to do a full body search in the showers. While Hammett was away, King testified that she slipped out of her handcuffs and went to examine the contents of the trash can.[2] After her examination, King alerted officers to the presence of potential contraband in the trash can.[3] An officer then came and went through the waste basket, and found around three grams of cocaine.
¶ 5. Law enforcement apparently had video footage of the room where Hammett and King were waiting, although the State failed to produce this footage for Hammett to inspect before trial.[4] Immediately before trial, the State finally admitted that the footage had been taped over and was no longer available. Hammett maintains that the footage would prove his innocence by showing that he did not place any substance in the trash can.
¶ 6. Before trial, Hammett filed a motion requesting that the judge in his case, the Honorable Forrest “Al” Johnson, Jr., re-cuse himself. The basis of the request was Hammett’s previous trial before Judge Johnson on a perjury charge in 1997, about seven years before the trial in this case.[5] That conviction was eventually reversed by the Mississippi Court of Appeals, but not until after Hammett had waited in jail for *93 a significant amount of time while trying to get his appeal prosecuted. Hammett believes that the delay in his appeal was a result of Judge Johnson’s prejudice toward him. In the present case, Judge Johnson refused the recusal request without a hearing.
¶ 7. Additional facts follow as necessary below.
ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Recusal

¶8. Hammett argues that Judge Johnson erred when he refused to recuse himself without holding a hearing on the merits of the request. Hammett claims that the basis of his request was his “reasonable perception that this Court would be prejudiced against him.” Hammett argues that the refusal to hold a hearing deprived him of “detailing his subjective perceptions, grounded in the stark reality of two years spent waiting for an appeal to be filed.” Hammett contends that the actions of Judge Johnson during his earlier perjury trial show prejudice:
Judge Johnson had ignored requests by Mr. Hammett to appoint an attorney so that his appeal ... could be timely prosecuted. It took two years for an appeal to be filed because the Court never appointed an attorney ... the Supreme Court ordered the Circuit Court to address the issue of no appeal having been filed. ■ Eventually, Judge Johnson did appoint Ms. Leslie Martin to file an appeal on behalf of Mr. Hammett and the Supreme Court reversed and rendered the sentence.
Hammett describes his earlier appeal as “an arduous, confusing process by which Mr. Hammett filed again and again to get his appeal prosecuted. Mr. Hammett became convinced that the Circuit Judge did not respond to his appeals because he did not like Mr. Hammett.”
¶ 9. Recusal of judges is governed by Canon 3 of the Mississippi Code of Judicial Conduct, which states: “Judges should disqualify themselves in proceedings in which their impartiality might be questioned by a reasonable person knowing all the circumstances.... ” Miss.Code Jud. Conduct, Canon 3(E). There is a presumption that judges are “qualified and unbiased.” Dodson v. Singing River Hosp. System, 839 So.2d 530, 533(¶ 10) (Miss.2003) (citations omitted). When determining whether recusal is proper, “re-cusal is required when the evidence produces a reasonable doubt as to the judge’s impartiality.” Id. at 533(¶ 13).
¶ 10. After careful review of the record before us, we find that Judge Johnson did not err by refusing to recuse himself. Hammett has presented no evidence sufficient to overcome the presumption that judges are “qualified and unbiased.” The primary thrust of Hammett’s argument rests on the fact that, after his previous trial before Judge Johnson, his appeal was significantly delayed. However, we find that this delay was due primarily to the inaction of Hammett’s counsel, not the court. When the problem became apparent to the court, Judge Johnson appointed appeal counsel for Hammett so that he could prosecute his appeal. Judge Johnson’s response did not evidence any prejudice against Hammett, despite his strenuous arguments to the contrary. Additionally, although Judge Johnson did not hold a formal hearing on the recusal motion, we note that he did allow Hammett and his attorney to convey the specifics of Hammett’s argument, including excerpts from filings in the earlier perjury case.
¶ 11. After reviewing the record, we find that Judge Johnson’s conduct was *94 professional and evidenced no prejudice toward Hammett. In fact, Judge Johnson complimented Hammett on his understanding of the law, and was very patient in listening to Hammett’s arguments and contentions. Judge Johnson also stated on the record that he bore “no animosity whatsoever toward Mr. Hammett.” When objections and motions arose, Judge Johnson did not rule against Hammett unfairly, nor did he bear an obvious preference for the prosecution.
¶ 12. Keeping in mind the relevant law, we cannot find that a reasonable doubt was raised as to Judge Johnson’s impartiality. In the absence of convincing evidence to the contrary, we find that Judge Johnson was “qualified and unbiased.” The decision whether to hold a hearing on the recusal motion was purely within Judge Johnson’s discretion, which was not abused. Therefore, Hammett’s first point of error is rejected.

(2) Inability of the State to produce vid-eofootage

¶ 13. In his second point of error, Hammett argues that the indictment in his case should have been quashed because of the State’s failure to preserve evidence. This issue was presented to Judge Johnson, who responded by prohibiting the State from presenting testimony about the contents of the footage. This ruling was significant, because several of the State’s witnesses were prepared to testify that they had viewed the footage, which allegedly showed Hammett removing drugs from his sock and placing them in the trash can. Judge Johnson specifically excluded this proposed testimony, ruling that it would be unfair after the loss of the footage that formed the basis of the testimony. Hammett’s bare assertion that the footage would have been exculpatory is not sufficient for us to find that his indictment should have been quashed.
¶ 14. Hammett argues that the court’s decision “effectively prohibited Defendant from mentioning the tape at all, thus denying him a viable theory of defense.... ” Hammett refers to the fact that Judge Johnson informed Hammett that, if he brought the footage up, the State would be allowed to put rebuttal witnesses on the stand. In essence, Hammett had two choices: he could (1) not mention the footage, and thereby prevent the State from presenting evidence about it, or (2) tell the jury his version of what the video would have showed, but suffer the consequence of the State being allowed to put on its own witnesses to describe their version of what the footage showed.
¶ 15. The court did not err in informing Hammett that the State would be allowed to put on testimony if Hammett first opened the door. If Hammett had testified to the jury about the deleted footage, it would have been proper for the court to then allow the State to put on similar testimony. We cannot imagine why Hammett should have been allowed to testify to the contents of the video footage without rebuttal from the State. Therefore, the court did not prevent Hammett from putting on an effective defense.
¶ 16. Hammett cites Smith v. State, 500 So.2d 973 (Miss.1986) as support. We find that Smith provides no relief to Hammett, as the issue in Smith was the non-disclosure of Brady material. In Hammett’s case, the State did not intentionally withhold exculpatory material, but instead lost a crucial piece of evidence. There was no question of non-disclosure, because there is nothing the State could disclose.
¶ 17. Hammett further argues that the “trial court should have required the State at the very least to put on credible, firsthand evidence as to why the tape was not *95 available.” As support, Hammett cites Box v. State, 437 So.2d 19 (Miss.1983). The notably different issue in Box was timely production of evidence. We assume Hammett cites Box because, in that case, “the prosecuting attorneys were questioned by the trial judge at length” concerning the reason for late production and for the State’s refusal to allow pre-trial examination of some photographs. Id. at 21. Box bears no relevance to the present case because there was no late production by the State in Hammett’s case. Even if Box were relevant, we note that Hammett did not present this potential solution below. After the attorney for the State informed the court that the video footage had been erased, Hammett’s attorney asserted that there were two issues related to the missing footage: (1) whether the officers who viewed the footage would be able to testify, and (2) whether the indictment charging Hammett should be quashed. Never was there any suggestion by Hammett or his attorney that the court hold a hearing as to why or how the footage was lost. Regardless of whether this issue is barred on appeal for failure to bring it below, we believe the holding of any hearing was firmly within the discretion of the trial court. Therefore, we find no error on the part of the court for not spontaneously holding a hearing to discover exactly how the footage was lost.
¶ 18. In the alternative, Hammett contends that the decision not to quash was in error because the evidence in his case was tampered with. As support, he cites Lambert v. State, 462 So.2d 308 (Miss.1984) and Wells v. State, 604 So.2d 271 (Miss.1992). Neither of these cases bear any relevance to the present case. Both Lambert and Wells deal with the issue of tampering and establishment of chain of custody. See Lambert, 462 So.2d at 312, and Wells, 604 So.2d at 277. In the present case, the contested footage was not presented at trial, and therefore there was no possible chain of custody issue.
¶ 19. Although Hammett does not phrase his argument in terms of intentional destruction of the footage by the State, we address that issue out of an abundance of caution. A three-part test has developed under Mississippi law in these eases: “(1) the evidence in question must possess an exculpatory value that was apparent before the evidence was destroyed, (2) the evidence must be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means, and (3) the prosecution’s destruction of the evidence must have been in bad faith.” Murray v. State, 849 So.2d 1281, 1286(¶ 16) (Miss.2003) (quoting State v. McGrone, 798 So.2d 519, 523(¶ 11) (Miss. 2001)).
¶ 20. We need not reach all three prongs of this test, because it is clear that Hammett cannot meet the first prong. There is simply no evidence that the video footage had an “exculpatory value that was apparent before the evidence was destroyed.” There is a presumption that the evidence would have been exculpatory, but the Mississippi Supreme Court has stated that the presumption applies only when “the spoliation or destruction was intentional and indicates fraud and a desire to suppress the truth.” Id. at 1286(¶ 19) (quoting Tolbert v. State, 511 So.2d 1368, 1372 (Miss.1987)). Here, there was no evidence whatsoever that the State acted intentionally or fraudulently in destroying the video footage, and, therefore, the exculpatory presumption will not apply to Hammett’s case. In the absence of the presumption, Hammett has no evidence that the footage had any exculpatory value. Hammett’s self-serving assertion that the video was exculpatory is insufficient to satisfy the first prong of the test. Therefore, *96 Hammett’s case does not require dismissal for destruction of evidence.[6]
¶ 21. Since we find no error on the part of the court in refusing to quash Hammett’s indictment or dismiss his case, Hammett’s second point of error is rejected.

(3) Insufficiency of the evidence

¶ 22. In his third point of error, Hammett argues that his conviction should be overturned because the evidence in his case was insufficient to support his conviction. Hammett contends that the evidence was insufficient because the State failed to prove the elements of his crime beyond a reasonable doubt.
¶ 23. Hammett first points to the testimony of King, which he contends “was impeached by her own earlier written statement that contradicted her testimony....” Hammett also contends that King’s testimony should not be sufficient to sustain his conviction because King “was in jail on a charge involving a lack of honesty, embezzlement. Further, her uncle worked at the jail.... Of course, there is always the possibility that she had the cocaine and she is the one who dumped it in the trash.” Hammett also points out that he never confessed to possessing the cocaine.
¶ 24. Finally, Hammett argues that, to be sufficient, the evidence must show that a defendant is guilty beyond a reasonable doubt, “and to the exclusion of every other reasonable hypothesis consistent with innocence.” As support, Hammett quotes Algheri v. State, 25 Miss. 584 (1853), where the Mississippi Supreme Court stated: “Whenever, therefore, the evidence leaves it indifferent which of several hypotheses is true, or merely establishes some finite probability in favor of one hypothesis rather than another, such evidence cannot amount to proof, however great the probability may be.” Id. (citations omitted). While Hammett accurately quotes Algheri, we find that more recent Mississippi law sheds greater light on the standard for sufficiency of evidence.
¶ 25. When reviewing whether the evidence in a case is sufficient to support conviction, we examine “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Dilworth, 909 So.2d at 736(¶ 17) (citing Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). We will reverse only if the court below abused its discretion in upholding Hammett’s conviction. Id. (citing Howell v. State, 860 So.2d 704, 764 (Miss.2003)).
¶ 26. Using the current Mississippi standard for sufficiency of the evidence, we find that the evidence in this case was sufficient to sustain Hammett’s conviction. Although Hammett argues strenuously that his conviction should not rest on the testimony of King, whom he views to have been impeached, the decision whether to believe a witness’s testimony lies solely within the province of the jury: “[We] consistently [hold] that decisions as to the weight and credibility of a witness’s statement are the proper province of the jury....” Doe v. Stegall, 757 So.2d 201, 205(¶ 12) (Miss.2000). The evidence in this case, viewed in a light most favorable to the State, was sufficient for a rational jury to find that all the elements of Hammett’s *97 crime were proved beyond a reasonable doubt. Therefore, there was sufficient evidence to support Hammett’s conviction. The court below did not abuse its discretion in denying Hammett’s motion for a directed verdict.

(tí Weight of the evidence

¶27. In his fourth and final point of error, Hammett contends that his conviction was against the overwhelming weight of the evidence.
¶ 28. When reviewing whether a conviction is against the overwhelming weight of the evidence, we reverse only if the verdict is “so contrary to the overwhelming weight of thé evidence that to allow it to stand would sanction an unconscionable injustice.” Dilworth v. State, 909 So.2d 731, 737(¶ 21) (Miss.2005) (quoting Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005)). When reviewing the evidence, we weigh it “in the light most favorable to the verdict.” Bush, 895 So.2d at 844(¶ 18). Reversal is required only if the trial court “abused its discretion in denying a motion for new trial.” Dilworth, 909 So.2d at 737(¶ 20).
¶ 29. After reviewing the evidence in this case, we do not find that the verdict was against the overwhelming weight of the evidence. Hammett contends that his conviction constitutes an “unconscionable justice” because he “offered a reasonable explanation as to the presence of the cocaine in the basket at the police station.” However, given the testimony of King, the limited access of individuals to the waste basket in question, and Hammett’s proximity to the basket, we find that the verdict in this case was not against the overwhelming weight of the evidence. Allowing the verdict to stand will not sanction an unconscionable injustice, and the court did not abuse its discretion in refusing to grant Hammett’s motion for a new trial.
¶ 30. Therefore, Hammett’s fourth and final point of error is rejected.
¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF ADAMS COUNTY OF CONVICTION OF POSSESSION OF A SCHEDULED II CONTROLLED SUBSTANCE (COCAINE) IN AN AMOUNT OF MORE THAN TWO GRAMS, BUT LESS THAN TEN GRAMS, AND SENTENCE OF SIXTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER WITHOUT REDUCTION, SUSPENSION, OR ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ADAMS COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.

. It was not entirely clear whether Hammett was patted down on the street where he was arrested, later at the police station, or both.

. King testified that she was able to slip out of her handcuffs because the officer who cuffed her fastened them very loosely in order to avoid hurting her.

. There were some discrepancies between King's testimony at trial and the written statement that she gave the day of Hammett's arrest. At trial, King testified that she heard the substance hit the bottom of the basket, but her written statement did not indicate that she had heard anything. King also admitted during cross-examination that she could not remember exactly what the trash can looked like.

. We use the term "video footage” to describe the evidence, which was not a videotape, but some sort of digital video material that was later recorded over.

. Hammett's perjury conviction in that case was later overturned in 2001, and he was released at that time. Although Hammett states in his brief that this occurred in 1999, the case, Hammett v. State, 797 So.2d 258 (Miss.Ct.App.2001), clearly was decided on January 23, 2001. Hammett's brief also states that the Mississippi Supreme Court overturned his conviction, but we note that this is also incorrect: the case was decided by the Mississippi Court of Appeals.

. Although Hammett did not request a jury instruction on spoliation, nor does he complain of the lack of a jury instruction on spoliation on appeal, we note that he would not have been entitled to an instruction on spoliation in the absence of evidence of fraudulent behavior or intentional destruction. See Murray, 849 So.2d at 1287.