# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-KA-01457-SCT

*DAVID ABERNATHY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/04/2008 |
| TRIAL JUDGE: | HON. SAMAC S. RICHARDSON |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOSEPH PATRICK FRASCOGNA |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/04/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLSON, P.J., DICKINSON AND PIERCE, JJ.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     This appeal comes to this Court from the Rankin County Circuit Court's denial of David Abernathy's Motion for Judgment of Acquittal Notwithstanding the Verdict and, in the alternative, Motion for a New Trial.

## FACTS AND PROCEEDINGS BELOW

¶2.     On August 24, 2006, David Abernathy was indicted for the felony offense of sexual battery in violation of Mississippi Code Section 97-3-95(1) (a) (Rev. 2006). Abernathy waived arraignment and entered his plea of not guilty the same day.

¶3.   These charges arose from an incident that occurred on September 6, 2005, in the home of one of his coworkers, Justin Gordon ("Justin"), and Justin's girlfriend, Jennifer Pigg ("Jennifer"). All of the relevant events occurred in the Gordon home, which is within the Pearl city limits, Rankin County, Mississippi. Tammy [1] was the victim of the sexual assault; she was twenty-two years of age at that time. Abernathy was forty-three years of age at the time.

¶4.   A trial was conducted on December 14, 2007, in the Circuit Court of Rankin County. At trial, the State called four witnesses in its case-in-chief: Detective Dewitt Seal of the City of Pearl Police Department ("Seal"), Jennifer, Justin, and the victim, Tammy.

¶5.   Seal was the primary investigating officer involved in the case. He testified regarding the particulars of his investigation, specifically detailing the statements taken from Tammy, Jennifer, and Justin. Following Seal's testimony, the State called Jennifer. At the time of the incident, Jennifer lived with her boyfriend Justin. Jennifer testified that she had worked for Custom Products Corporation of Flowood, where Justin and Abernathy both were employed. Justin and Abernathy were coworkers and friends at the time.

¶6.   Jennifer testified regarding the events of the evening in question. At some time during the day, Jennifer had spoken with Tammy, and they had agreed that Tammy would spend the night at Jennifer's home. Jennifer stated that, in the early afternoon, Justin had arrived home with beer, planning to have an evening cookout. Shortly thereafter, Abernathy arrived, bringing more beer. Abernathy had intentions of staying with Justin and Jennifer that evening, as he was without a permanent home at the time.

---

[1] "Tammy" is a pseudonym used by this Court to protect the victim's identity.

¶7.    Jennifer testified that, shortly after Tammy arrived at Jennifer's house that evening, she became ill and complained of a headache. Tammy then retired to the guest bedroom in the house. Jennifer further testified that she was aware that Tammy previously had suffered from migraines but, to her recollection, Tammy did not suffer from them often. Throughout the evening, Abernathy made several trips to the bedroom to "check" on Tammy. After several visits, Jennifer and Tammy  instructed Abernathy not to return.

¶8.    After Jennifer's testimony, the court called a recess for lunch.  During the break, Jamie McBride, attorney for the State, requested the trial court to invoke the rule[2] as to the exclusion of witnesses, and addressed the court regarding Dr. Howard Katz's presence in the courtroom. The defense then indicated that it intended to call Dr. Katz later in the trial to testify as an expert concerning migraine headaches. The attorney for the defense made an ore tenus motion regarding the relevance of Dr. Katz's testimony and discussed his reasons for calling him. After the defense's explanation, the court responded:

> Well, we're not going to get through with this trial today. It's going to go into tomorrow at this point. But, I'm not going to rule on that right now. I'll do a Daubert [3] hearing on it at the proper time. But we need to get the rest of the testimony in and then I'll do the Daubert hearing and ever how long it takes,

[2]Rule 615 of the Mississippi Rules of Evidence provides that at the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. Jamie McBride, attorney for the State, simply invoked this rule.

[3] ***Daubert v. Merrell Dow Pharmaceuticals, Inc.***, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d. 469 (1993) (holding general acceptance is not a necessary precondition to the admissibility of scientific evidence under the Federal Rules of Evidence, and that the Rules assign trial judges the task of ensuring that expert's testimony both rests on a reliable foundation and is relevant to the task at hand). Usually, a ***Daubert*** hearing is held prior to trial or during trial regarding the reliability and relevance of a party's expert witness.

it takes. We're going to stay here until we get through with it. I don't care if it's Sunday.

¶9.    Next, the State called Justin to testify. Justin testified regarding his friendship with Abernathy. He restated the facts previously offered by Jennifer. He also testified that, in the past, Tammy had used the term "migraine headache" in his presence. However, he testified that the night in question was the first time she had described her personal illness as a migraine headache.

¶10.    Finally, the State called Tammy. She testified regarding her illness that evening. Tammy had been diagnosed in high school with having migraines by her personal physician, Dr. Roy B. Kellum.[4] She said that after Jennifer and Justin went to their bedroom on the evening in question, Abernathy entered the bedroom in which she was sleeping. Tammy testified that Abernathy had climbed on top of her, at which point she told him to "stop" and "get off." Tammy recalled that Abernathy told her not to scream. She further testified that Abernathy pulled down her shorts and panties, spread her legs apart and placed his finger into her vagina. In addition, Tammy stated that Abernathy had inappropriately touched her on several parts of her body. Finally, Tammy testified that she was pregnant at the time of the incident but did not discover her pregnancy until after the incident occurred. The State rested after Tammy's testimony.

¶11.    At the close of the State's case-in-chief, the court asked the defense again for its reasoning in calling Dr. Katz. Attorney Pat Frascogna responded:

---

[4] It should be noted that Tammy used the words "migraine" and "headache" interchangeably throughout her testimony.

4

Your Honor, the victim in this case, just a few moments ago, said that she has been diagnosed since high school, with a migraine headache condition of some sort. She has suffered from those since that age, since high school age. Dr. Katz is here to not — not to offer any kind of conclusion or expert opinion on what David Abernathy may or may not have been involved in at that house that evening, but merely to describe for the jury the migraine headache and what it means as far as its affect [sic] or possible effects on suffering and such. . . .

Your Honor, the migraine – the migraine headaches, and this is what Dr. Katz will show, migraine headaches are responsible for a wide variety of, let's say misperceived, misperceived [sic] events in one's life while they're having such. In other words, the sufferer of a migraine headache may perceive something about their environment that is not actually there, which is not part of that environment, and testimony today would be merely to give case history an example of that and nothing more.

¶12.    After further discussion with both attorneys, the Court responded:

Okay. Normally, you hold a Daubert . . . hearing to determine whether or not the evidence, testimony offered is – and whoever came up with the term, I don't particularly like it, but they want the courts to be the gate keeper to determine if it's junk [science]. I don't believe for one minute that what Dr. Katz would testify to would be junk [science]. But because we all know migraine headache exists, there are different causes for them, and people react to them and in different ways.

That being said, my observation at this point is this that, (1) I hadn't heard any testimony that – of a medical nature that would classify this headache this lady had as a migraine headache. There's no medical testimony to that. She said she had a headache. She said that it – she used the term migraine to describe it. But other than her saying that, I don't know that it's a migraine. There's been no testimony to indicate that this lady has ever suffered from any hallucinations with or without a headache. We don't know the severity of the degree of the headache. There's no evidence about that.

Unless I'm told otherwise, I'm not sure that Dr. Katz knows what the medical history of this victim is, if it's ever been reviewed by him. I don't know whether or not he's ever examined this victim.

Medications taken. The witness is not even sure what medication she's taken, whether – or what it was, so we don't know how that would affect this headache.

5

If Dr. Katz is going to testify as to generally the case histories and generally to how migraine affects people, that doesn't mean that it affects this woman that way. It might. It might not. Unless you can come up with something to tie his testimony to this witness, it's not relevant as far as I'm concerned and I'm deciding it on a relevancy issue and not on a medical issue.

So with that, seat the jury and call your first witness. If you think you can get it to that point, that's you know, I'll reconsider it. But at this point, I don't see how.

**MR. FERRELL**: Your Honor, I'm Wayne Ferrell and I'm here representing Dr. Katz when we – when it was announced that there would be a Daubert hearing. I'm here to represent him individually as far as his qualifications and, you know, being disqualified on what – on his expertise. That's the reason I'm here in the courtroom.

**THE COURT**: Okay. Well, right now it's not relevant and we're not even getting over into that boat.

¶13. At the close of the discussion, Judge Richardson denied Abernathy's motion for directed verdict. The defense then began its case-in-chief with the testimony of Sandra Newman. Next, the defense called Abernathy. Abernathy's testimony consisted of his recollection of the night in question. Abernathy testified that Tammy had complained of headaches throughout the evening and even had vomited at one point in the night. Abernathy had assisted Tammy outside with a wet washcloth, and then she retired to bed almost immediately thereafter. Abernathy testified that he did enter her room at one point and sit on the side of the bed where Tammy was sleeping. He claims that he did not disturb her by pulling back the covers and that he did not disrobe her.

¶14. After Abernathy's testimony the court asked the defense to call its next witness. The following exchange occurred:

**THE COURT**: Who would you have next for the Defendant?
**MR. FRASCOGNA**: That's all, your Honor.

**THE COURT**: Does the Defendant rest?
**MR. FRASCOGNA**: Yes, sir.

¶15. After the defense rested, the State called Justin Gordon as a rebuttal witness. At the close of his testimony, the State finally rested. At that time, the judge delivered instructions to the jury and charged it with its duty. After closing arguments, the judge dismissed the jury for deliberation. Once the jury retired, the trial court offered one last statement regarding Dr. Katz's testimony:

> The jury is out. On the record just a moment. There was another issue, or not issue, but I wanted to have something else included in the record on my ruling on the – on Dr. Katz's testimony I forgot to put in there earlier.
>
> [Tammy] testified that she threw up. Tammy testified that she discovered she was six weeks pregnant, and I think that the Court can probably take judicial notice of the fact that when you're pregnant, you throw up, or most, I'd say 99 percent of the women do and it is not necessarily in the morning, and that's, I know, also an indicator, that throwing up is an indicator of a migraine headache. It's also an indication of being pregnant. Okay.

¶16. The jury returned a verdict of guilty as charged in the indictment. Abernathy subsequently was sentenced to serve a term of thirty years in the custody of the Mississippi Department of Corrections with twenty years suspended and a period of five years on supervised probation upon release from incarceration.

¶17. After the trial, Abernathy moved for judgment of acquittal notwithstanding the verdict. Counsel for the defense argued that there was no specific finding regarding Dr. Katz's testimony and that there was no specific finding regarding the reliability of the opinions that Dr. Katz would have provided. Judge Richardson summarily denied the motion.

## ANALYSIS

7

**I.** **Whether the trial court erred in excluding the expert testimony of Dr. Katz.**

¶18.   "[T]he admission of expert testimony is within the sound discretion of the trial judge." *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 34 (Miss. 2003) (citing *Puckett v. State*, 737 So. 2d 322, 342 (Miss. 1999)).   "Therefore, the decision of the trial judge will stand 'unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion.'" *Id.*

¶19.   The basis of Abernathy's appeal centers around the fact that Dr. Katz did not testify at trial.  Specifically, Abernathy avers that the trial court erred because it determined Dr. Katz's testimony to be irrelevant, and, therefore, excluded said testimony.  "This Court has repeatedly held that when testimony is excluded at trial, a record must be made of the proffered testimony in order to preserve the point for appeal." *Murray v. State*, 849 So. 2d 1281, 1289 (Miss. 2003). The Official Comment to Rule 103 of the Mississippi Rules of Evidence states that ". . . when a party objects to the exclusion of evidence, he must make an offer of proof to the court, noting on the record for the benefit of the appellate court what evidence the trial judge excluded." *Vaughn v. State*, 759 So. 2d 1092, 1105 (Miss. 1999) (Smith, J., specially concurring); *see also King v. State*, 374 So. 2d 808 (Miss. 1979); *Brown v. State*, 338 So. 2d 1008 (Miss. 1976).

¶20.   It is evident from the trial transcript that the defense failed to make a sufficient proffer after the trial court excluded Dr. Katz's testimony.  Although the defense mentioned Dr. Katz prior to trial and discussed Dr. Katz's proposed testimony during trial, the defense did not effect a sufficient proffer.  See ¶¶ 11-12, *supra*, for the trial excerpts containing said

8

discussion. Even finding that the testimony of Dr. Katz would have been relevant, the record is insufficient for us to determine whether it could have survived under the Mississippi Rule of Evidence 403 balancing test for admissibility.[5] It is incumbent upon the proponent of evidence to make an adequate record of the proposed testimony which this Court can review. This was not done in this case; without such we are unable to find that the trial court erred.

¶21. Accordingly, we find that the record lacks the necessary information to make a determination concerning the admissibility of the evidence, even if found to be relevant. Likewise, the lack of a sufficient proffer renders this Court unable to hold the trial judge in error. Therefore, the conviction and sentence of David Abernathy are hereby affirmed.

## II. Whether the evidence was insufficient to support the verdict.

¶22. Additionally, Abernathy avers on appeal that the evidence presented at trial was insufficient to support the verdict. The critical inquiry when considering the sufficiency of the evidence is to decide whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Morris v. State*, 927 So. 2d 744, 748 (Miss. 2006) (citing *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005)). In the instant case, there was testimony that Abernathy did commit sexual assault upon Tammy. The case largely consisted of the victim's word against the defendant's. This presents a factual dispute to be resolved by a jury. We cannot conclude that any rational trier of fact could not have found the essential

---

[5] Rule 403 of the Mississippi Rules of Evidence allows for relevant evidence to be excluded ". . . if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Miss. R. Evid. 403.

elements of the crime beyond a reasonable doubt, when the evidence is viewed in the light most favorable to the State. Accordingly, this assignment of error is without merit.

## CONCLUSION

¶23. Because Abernathy failed to make a sufficient proffer concerning Dr. Katz's testimony, this Court finds that Abernathy failed to preserve the issue of Dr. Katz's testimony for appeal. Accordingly, the trial court's ruling denying Abernathy's Motion for Judgment of Acquittal Notwithstanding the Verdict and Motion for New Trial is hereby affirmed, as is the conviction and sentence.

¶24. **CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED. THE LAST TWENTY (20) YEARS OF THE SENTENCE ARE HEREBY STAYED AND THAT PORTION OF THE SENTENCE IS SUSPENDED. UPON RELEASE, THE APPELLANT SHALL BE PLACED ON SUPERVISED PROBATION UNDER THE DIRECT SUPERVISION OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS FOR FIVE (5) YEARS.**

**CARLSON, P.J., DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., KITCHENS AND CHANDLER, JJ.**

**GRAVES, PRESIDING JUSTICE, DISSENTING:**

¶25. I disagree with the majority's conclusion that Abernathy failed to make a sufficient proffer concerning Dr. Katz's testimony. Abernathy complied with the rule of evidence and the caselaw relevant to proffering evidence by adequately explaining to the trial court and into the record why Dr. Katz's testimony was relevant. Therefore, I must dissent.

**I. Abernathy complied with the rule of evidence and the caselaw relevant to proffering evidence by adequately explaining why he was offering Dr. Katz's testimony.**

¶26. Rule 103 of the Mississippi Rules of Evidence explains that a trial court's exclusion of expert testimony can be found in error only if "the substance of the evidence [e.g., expert testimony] was made known to the court by offer or was apparent from the context within which questions were asked." Miss. R. Evid. 103(a)(2). *See also* **Heidel v. State**, 587 So. 2d 835, 844 (Miss. 1991) ("Before a party may secure appellate reversal on an evidentiary exclusion, that party must have placed in the record the substance of the evidence he would have offered had the court ruled otherwise."). The comment to Rule 103 explains that "when a party objects to the exclusion of evidence, he must make an offer of proof to the court, noting on the record for the benefit of the appellate court what evidence the trial judge excluded." Miss. R. Evid. 103(a) cmt.

¶27. As explained in the cases regarding proffers cited by the majority, the purpose of the rule requiring the proponent of excluded evidence to "state[] into the record what is excepted [*sic*] to be proved . . . " is "to enable the trial court to judge the competency of the proffered evidence and this Court can review it on appeal." **Brown v. State**, 338 So. 2d 1008, 1009-10 (Miss. 1976). *See also* **White v. State**, 507 So. 2d 98, 102 (Miss. 1987) ("The rule is that 'when a party would seek a reversal because of excluded testimony . . . the witness must be presented, and there must be a specific statement of what the answers or testimony of the witness would be, if allowed, so that the court may see from the record itself whether the offered evidence would be material and of benefit to the merits of the case . . . "); **Quaig v. McCoy**, 806 F. 2d 1298, 1301 (5th Cir. 1987) ("The purpose of the proffer is to make known to the court for what reasons the evidence is offered.").

11

¶28.    This Court has explained that "counsel, when not permitted to present a witness's testimony, must *by some manner or means* cause the record to show precisely what he intended to prove by the witness." ***Bell v. State***, 443 So. 2d 16, 20 (Miss. 1984) (emphasis added). *See also **Quaig***, 806 F. 2d at 1301 ("While the evidence must be offered to the court, *we do not require a formal proffer*; instead, the proponent of excluded evidence need only show *in some fashion* the substance of the proposed evidence.") (emphasis added). In other words, the fundamental requirement of the rule is not that the proponent of the excluded testimony use the word "proffer" or any other specific language in introducing his explanation of the relevance of the testimony; rather, the fundamental requirement is that the proponent adequately explain to the court why the testimony is being offered.

¶29.    This Court emphasized the flexibility of the rule regarding proffers in ***Murray v. Payne***. It explained:

> It is not necessary that the parties place in the record every detail of what their proof would have shown. All we require is that the party offering the excluded testimony make a clear record showing to us that there is substance to his point, that on reversal and remand there is a substantial likelihood that he will be able to offer evidence which may reasonably be expected to have an impact on the outcome of the case. We do not require that the appealing party place in the record the total and complete details of the proffered but excluded testimony. Nor do we require certainty that exclusion of that testimony affected the outcome of that first trial.

***Murray v. Payne***, 437 So. 2d 47, 55 (Miss. 1983). The ***Murray*** court held that, while the proponent of the excluded testimony did not make a formal proffer, the record was sufficient to inform the Court what the substance of the excluded testimony would be. ***Id.***

¶30.    In the instant case, Abernathy complied with Rule 103 and the relevant caselaw by presenting Dr. Katz to the court and explaining to the court what the upshot of Dr. Katz's

12

testimony would be. Abernathy detailed to the court and into the record on multiple occasions why Dr. Katz's testimony about the psychological and physiological effects of migraines was relevant and essential to his theory of defense.

¶31. In a pretrial motion, Abernathy's counsel explained why he intended to call Dr. Katz as a witness:

> . . . [T]he complainant in this cause provides numerous statements in the discovery relating to the ill-effects she suffered from a severe migraine headache (i.e., vomiting, nausea, etc.) which continued throughout the events, both before and subsequent to, the alleged criminal conduct of the Defendant.
> . . . [B]ecause the medical condition the complainant experienced from the migraine headache she suffered on the action date of the case, the Defense identified a medical doctor in the Rankin County area, Dr. Howard Katz, during the spring of 2007 who is qualified to give expert testimony in the physiological and psychological effects on the human body during a severe attack of a migraine headache.
> . . .
> [T]he expert testimony of Dr. Katz is essential to virtually every aspect of the Defendant's case to be presented at trial, without which, he will be severely prejudiced.

Additionally, in Abernathy's Notice of Witnesses and Reciprocal Discovery, he stated that "Dr. Katz will testify as to the physiological and psychological effects of migraine headaches."

¶32. Abernathy discussed the relevance of Dr. Katz's testimony on two separate occasions during trial and again during the argument of his Motion for Judgment of Acquittal Notwithstanding the Jury Verdict or, in the Alternative, Motion for New Trial. The first time the issue was raised during trial was during a lunch break when the State noticed Dr. Katz sitting in the courtroom and notified the court that it objected to Abernathy calling Dr. Katz as a witness. During this discussion, Abernathy's counsel explained:

13

Your Honor, Dr. Howard Katz is here today and he's been noticed as an expert – as an expert witness in this case. Dr. Katz is an expert in migraine headaches. . . .

[H]e's here . . . to discuss and explain what a migraine headache involves and the physiological events [*sic*] as well as psychological, generally, on those who suffer from it, and that has relevance in this case because the victim in this case has alleged that she was compromised physically because of the migraine headache and that she was unable to protect herself in some regard and to some degree from the defendant. She talks about faking a seizure or something.

Dr. Katz is basically here to merely explain what the migraine headache is and how it affects someone such as [Tammy[6]] in this case.

¶33. The issue of Dr. Katz's testimony was again discussed during trial when Abernathy's counsel, before calling his first witness, made a motion *in limine* regarding this issue. In support of its argument that Dr. Katz's testimony was relevant and should be admitted, Abernathy's counsel stated:

Your Honor, the victim in this case, just a few moments ago, said that she has been diagnosed, since high school, with a migraine headache condition of some sort. She has suffered from those since that age, since high school age. Dr. Katz is here to not – not to offer any kind of conclusion or expert opinion on what David Abernathy may or may not have been involved in at that house that evening, but merely to describe for the jury the migraine headache and what it means as far as its affect [*sic*] or possible effects on suffering and such.
. . .
Your Honor, the migraine – the migraine headaches, and this is what Dr. Katz will show, migraine headaches are responsible for a wide variety of, let's say misperceived, misperceived events in one's life while they're having such. In other words, the sufferer of a migraine headache may perceive something about their environment that is not actually there, which is not part of that environment, and testimony today would be merely to give case history an example of that and nothing more.

---

[6] As the majority has noted, "Tammy" is a pseudonym used by this Court to protect the victim's identity.

14

¶34. Abernathy's counsel explained the relevance of Dr. Katz's testimony a final time during the argument of Abernathy's Motion for Judgment of Acquittal Notwithstanding the Jury Verdict or, in the Alternative, Motion for New Trial. Abernathy's counsel explained:

> As the court no doubt is aware, your Honor, a basic tenet of the rules of evidence with regards to the relevance of evidence is . . . whether any piece of evidence . . . would tend to make a fact or consequence more or less likely or more or less probable than that fact or consequence would have been without that . . . particular piece of evidence.
>
> In this case, one of the facts or consequence at trial was whether or not the victim, as alleged . . . accurately recalled the events that . . . were testified to.
> . . .
> Dr. Katz was proffered to testify with respect to the effects of migraine headaches upon individuals, and in particular the propensity . . . that migraine headaches, among other things, caused not necessarily hallucinations, but cause the possibility that a migraine could cause a person to inaccurately recollect events that unfolded during that period of time that the person was suffering from migraine headaches.
>
> So we submit, your Honor, that . . . this proffered testimony would no doubt . . . have been relevant to the issue of whether or not the victim, as alleged, accurately recalled the events of propensity to the sexual battery.
> . . .
> [T]he victim did testify that she was diagnosed with migraines and, therefore, we submit that there was sufficient basis to allow Dr. Katz to expound on . . . what symptoms that particular condition could cause and specifically how that particular condition could have affected the accuracy of the victim's recollection of the . . . events.

¶35. In sum, Abernathy complied with Rule 103 and the relevant caselaw by adequately explaining to the trial court and into the record why Dr. Katz's testimony was relevant and important to his theory of defense.

**II. The trial court abused its discretion when it found Dr. Katz's testimony irrelevant.**

¶36. As the majority notes, the standard of review for the admission or exclusion of expert testimony is abuse of discretion. *Taylor v. State*, 954 So. 2d 944, 948-49 (Miss. 2007) (citing

15

*Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 34 (Miss. 2003)). It was an abuse of discretion to exclude Dr. Katz's testimony about migraines because testimony was offered that Tammy had a migraine on the evening of the alleged assault, and therefore, expert testimony regarding the effects of migraines would have been relevant.

### A. Testimony was offered that Tammy had a migraine on the evening of the alleged assault.

¶37. During direct examination of Tammy, she testified that she had suffered from a migraine on the evening of September 6, 2005 – the evening of the alleged assault. She explained:

> I had had it [i.e., a headache] all afternoon and it just got worse as the night went on. While we [i.e., Jennifer and I] were riding around [in the car doing errands] it got really bad. And by the time we got home, I asked her [i.e., Jennifer] for something to take to make it feel better. So she gave me – I don't know what it was. It was probably Tylenol or an Excedrin or something. But I took that and for the rest of the night it just got worse and worse and worse.
> . . .
> [S]he and I both had migraines in the past and I knew she would have something to take for it, because I didn't bring anything with me.

¶38. Further, when Tammy was asked during direct examination what type of medication she would normally take if a migraine came on, she explained that she would normally take Darvocet, a drug legally obtained only by prescription. In other words, a medical professional at some point must have diagnosed Tammy with a migraine condition before prescribing her the drug Darvocet.

¶39. Moreover, when Tammy was asked during cross-examination whether she was "suffering from a migraine headache" the evening of the alleged assault, she replied, "Yes, sir." She went on to explain that she had been diagnosed with a migraine condition, that it

16

was common for her to get migraines, and that she had suffered from them since she was in high school.

¶40.   In addition, when Abernathy's counsel asked on cross-examination, "Previously or earlier in that same evening when you were having symptoms from the migraine, did that include nausea – and vomiting and so forth?" Tammy responded "Yes, sir."

¶41.   Jennifer and Justin testified that during the evening in question, Tammy referred to her headache as a migraine.  Further, Jennifer testified: " . . . [Tammy] did get sick from her migraine and she threw up" and "I knew she had migraines . . . . "

¶42.   Lastly, in the State's Disclosure of Trial Witnesses, which was provided during discovery, the State informed Abernathy that "[Tammy] will testify that on the evening of September 6, 2005, that she was suffering from a migraine headache and was feeling very ill."  In other words, even the State (which now argues that it is questionable that Tammy had a migraine that evening) at one time asserted that Tammy did in fact suffer from a migraine that evening.

¶43.   In sum, Tammy's friends testified that Tammy had told them on the evening of the alleged assault that she was suffering from a migraine; Tammy, as well as her friends, testified that Tammy had a very bad headache that evening and that she also had vomited; Tammy herself testified that she had suffered from a migraine that evening; Tammy testified that her doctor had diagnosed her with migraine headaches and that she had suffered from them since high school; Tammy testified that she had been prescribed Darvocet for her migraine condition; and lastly, Tammy told the prosecutors that she had a migraine that evening, and they informed Abernathy that this fact would be a part of Tammy's testimony.

### *B. Dr. Katz's testimony was relevant.*

¶44.    In light of the testimony regarding Tammy's history of migraine headaches and her symptoms during the evening of the alleged assault, Dr. Katz's testimony about migraines and how they may impair sufferers' ability to recall events accurately was relevant. Rule 401 of the Mississippi Rules of Evidence explains that evidence is "relevant" when it has a "tendency to make the existence of any fact that is of consequence to the determination of the action [e.g., the fact that Tammy accurately recalled the events of the evening in question] more probable or less probable than it would be without the evidence." Miss. R. Evid. 401. *See also **Investors Res. Servs., Inc. v. Cato***, 15 So. 3d 412, 417 (Miss. 2009) ("Rule 401 favors admission of the evidence if it has any probative value. '[T]he threshold for admissibility of relevant evidence is not great. Evidence is relevant if it has any tendency to prove a consequential fact.'" (internal citation omitted)). In addition, Rule 702 of the Mississippi Rules of Evidence provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise . . . ." Miss. R. Evid. 702.

¶45.    Dr. Katz's testimony would have assisted the jury in understanding what bearing Tammy having a migraine that evening had on the case, and in determining whether Tammy's recollection of that evening's events had been impaired. The ability of a witness – not to mention the prosecution's key witness – to observe and recollect the assault about which she is testifying is of utmost relevance.

18

¶46.    Relevant evidence "may be excluded if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Miss. R. Evid. 403. As discussed above, the testimony introduced at trial regarding Tammy's history of migraines and her symptoms during the evening of the alleged assault makes the probative value of Dr. Katz's testimony significant. Second, the only "danger" (of those dangers listed in Rule 403) that the State raised during discussions of the admissibility of Dr. Katz's testimony was the danger of confusion of the jury. While Dr. Katz's testimony likely would have caused the jurors to consider the possibility that Tammy's ability to observe or recollect that evening's events was impaired, it would not have confused the jurors, and it certainly would not have confused them to the extent that the confusion would have outweighed the probative value. Furthermore, the State would have had the opportunity during cross-examination of Dr. Katz to attack the weight and worth of his testimony.

¶47.    Even the trial court seemed to agree that when a victim testifies that she had a migraine on the date and time of an alleged assault, expert testimony regarding migraines and their effects on those who suffer from them would be relevant. At the hearing regarding Abernathy's Motion for Judgment of Acquittal Notwithstanding the Jury Verdict or, in the Alternative, Motion for New Trial, which occurred nearly six months after the trial, the trial court heard arguments regarding the relevance of Dr. Katz's testimony, and in closing remarks stated:

19

> If I remember correctly, I think the lady testified that she had a headache, but it was not a migraine headache, that she had them before. And if she didn't have a migraine headache, then Dr. Katz's testimony was not necessary. It was not relevant.
>
> *If she had testified that she had them, experienced a migraine headache that night, then you've got a whole different situation.* She didn't testify to that. That was something that the defendant brought to the court's attention, and since he was drunk, I don't know he knew that she had a migraine headache. So, the motion is denied.

(Emphasis added.) Again, Tammy *did* testify that she had a migraine the evening of the alleged assault; the trial court did not correctly recall Tammy's testimony. At trial, the trial court itself noted that Tammy had testified that she had a headache and that "she used the term migraine to describe it." Thus, but for the trial court's erroneous recollection that Tammy had testified that she did *not* have a migraine on the evening in question, it appears the trial court would have found Dr. Katz's testimony relevant.

¶48. It is true that the trial court, earlier in the proceeding, found Dr. Katz's testimony irrelevant on other grounds – those grounds being, namely: 1) no testimony of a medical nature was offered that would classify Tammy's condition on the evening in question as a migraine, and 2) Dr. Katz would not be testifying to the effects that migraines have on Tammy specifically, but rather to the effects migraines have, generally, on people who suffer from them. As just noted, however, in the trial court's final remarks on the issue of Dr. Katz's testimony, it agreed that when a victim testifies that she had a migraine on the date and time of an alleged assault, expert testimony regarding the effects of migraines *would* be relevant.

**C. A defendant has a right to have every lawful defense he asserts presented to the jury.**

20

¶49. A defendant has a fundamental right to have every lawful defense he asserts presented to the jury, even if that defense is highly unlikely. *See* ***Chinn v. State***, 958 So. 2d 1223, 1225 (Miss. 2007) (" . . . every accused has a fundamental right to have [his] theory of the case presented to a jury, even if the evidence is minimal."); ***Phillipson v. State***, 943 So. 2d 670, 671-72 (Miss. 2006) ("We greatly value the right of a defendant to present his theory of the case . . . ."); ***O'Bryant v. State***, 530 So. 2d 129, 133 (Miss. 1988) ("It is, of course, an absolute right of an accused to have every lawful defense he asserts, even though based upon meager evidence and highly unlikely, to be submitted as a factual issue to be determined by the jury under proper instruction of the court. This Court will never permit an accused to be denied this fundamental right."). According to Abernathy's brief, his theory of defense was "first, that he did not commit the acts of which he stood accused, and second, the stated fact that the victim was suffering from a migraine headache and possibly enceinte at the time was material and crucial to the matter of the victim's accurate recollection of the events, among other things, that transpired that evening." Abernathy thus had a right to call Dr. Katz in support of his theory that the migraine headache Tammy had the evening of the alleged assault may have caused her to recollect inaccurately what happened between the two of them.

**Conclusion**

¶50. In conclusion, I disagree with the majority's finding that Abernathy failed to make a sufficient proffer concerning Dr. Katz's testimony; I conclude that Abernathy made an adequate proffer, satisfying the purpose of Rule 103. In addition, I conclude that the trial court abused its discretion in finding Dr. Katz's testimony irrelevant. Accordingly, I dissent

21

and would reverse and remand this case for a new trial with instructions to the trial court to admit Dr. Katz's testimony.

**WALLER, C.J., KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION.**